IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. VON HOLDT, JR., JANICE ANDERSON, and PLAS-TOOL CO., | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case No. 04 C 4123 |
| | ) | Magistrate Judge Nan R. Nolan |
| A-1 TOOL CORPORATION, ALFONSO ARCINIEGAS, GEOFFREY LUTHER, and LEROY LUTHER | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant A-1 Tool Corporation and non-party Central Can Company's Joint Motion for Protective Order pursuant to Federal Rule of Civil Procedure 26(c). For the reasons that follow, the Joint Motion for Protective Order [55-1, 95-1] is denied.

## BACKGROUND

Plaintiff Plas-Tool Co. ("Plas-Tool") is in the business of designing plastic pails and lids, and designing, manufacturing and selling complex plastic-injection molds for producing plastic buckets or pails and lids for sale to bucket or pail and lid manufacturers. Plaintiff John von Holdt, Jr. ("von Holdt") is the president and chairman of the board of Plas-Tool. Since at least 1993, Defendant A-1 Tool Corporation ("A-1") has been "in the business of designing, manufacturing and selling plastic-injection molds for industrial and household products, other than pail molds." Third Am. Cmplt. ¶ 4. Since December 1997, A-1 has also been in the business of designing, manufacturing, and selling pail molds. Id.

Central Can Company ("Central") is a manufacturer of metal cans and other containers primarily for commercial and industrial use. Affidavit of Terry L. Kline ¶ 1. In approximately April

of 2003, Central decided to design and manufacture a plastic container for sale. Id. ¶ 2. During the early stages of Central's plastic container project, Terry Kline, President of Central, met with different design firms with experience in the field. Id. ¶ 3. During May of 2003, Mr. Kline met with John von Holdt, Jr. in his capacity as President of Plas-Tool. Id. Prior to discussing specifics of the Central plastic container project, Plas-Tool and Central entered into a Joint Confidential Disclosure Agreement to protect Central's confidential data. Id. Paragraph 7 of the Joint Confidential Disclosure Agreement between Plas-Tool and Central states that, "[r]eceiving party recognizes that any proscribed disclosure, divulgence, use or reproduction of the Confidential Data will cause irreparable harm to the disclosing party, . . . ." Id. ¶ 4. Mr. Klein states that on May 15, 2003, Mr. von Holdt indicated that Plas-Tool had already developed and licensed a plastic paint can design to a competitor of Central. Id. ¶ 5.[1] Soon thereafter, Mr. Klein decided that Central could not retain Plas-Tool because it had an interest competitive to Central in the market. Id. ¶ 6.

Mr. Kline later met with representatives from a design company known as Precise Technology, Inc. ("Precise") to discuss the plastic container project. Kline Aff. ¶ 7. Before those discussions, Central and Precise entered into a Confidentiality Agreement on September 10, 2003 to protect Central's confidential information. Id. Central and Precise entered into a Mold Development Engagement Agreement in February of 2004. Id. ¶ 8. Central and Precise spent numerous hours working together to create the design and manufacturing process for a plastic container. Id. Central paid significant funds to Precise for design services and unit cavity molds

---

[1] In May 2000, Plaintiffs licensed to another entity, the exclusive rights to make, have made, use and sell certain molded plastic containers 5 liters or less within the scope of Mr. von Holdt's patents related to molded plastic paint cans and lids, and embodying the Plastic Paint Container Trade Secrets as defined at page 3 of this Opinion. Affidavit of John W. von Holdt, Jr. ¶ 4.

related to Central's plastic container project. Id.

Central hired A-1 during August of 2004 to "improve the design work provided by Precise." Kline Aff. ¶ 9. Prior to Central disclosing any confidential information related to the plastic container project, A-1 and Central entered into a Confidentiality Agreement dated August 3, 2004. Id. Central has sent to A-1 documents relating to its project, and A-1 has sent documents to Central. Under the terms of the Confidentiality Agreement, A-1 is obligated to protect from disclosure information furnished to A-1 by Central. The Confidentiality Agreement also requires A-1 to cooperate with Central in seeking an appropriate protective order restricting disclosure of Central's proprietary information. Central's plastic container project is now close to completion. Id. ¶ 10.

Plaintiffs commenced this patent infringement and trade secret misappropriation case on June 21, 2004. Plaintiffs allege that Defendant Alfonso Arciniegas ("Arciniegas") worked for Plas-Tool from 1978 through 1997. The complaint further alleges that Arciniegas has been employed by A-1 since December 1, 1997. Plaintiffs allege that Arciniegas misappropriated trade secrets from Plas-Tool and has used them while employed at A-1. Plaintiffs' Opposition states that among the trade secrets Plas-Tool developed and disclosed to Arciniegas during his employment is confidential information related to (a) product design of plastic paint cans and lids; (b) the molds used to manufacture the plastic paint cans and lids; and (c) the methods and materials used during the manufacturing process of the plastic paint cans and lids (the "Plastic Paint Container Trade Secrets"). The complaint also alleges patent infringement, a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.*, breach of fiduciary duty, inducement to breach of fiduciary duty, tortious interference with business expectancies, and conspiracy to tortiously interfere with business expectancies.

On September 15, 2004, the parties stipulated to, and this Court approved, a Protective Order Against Unauthorized Use or Disclosure of Confidential Information to prevent "the public disclosure of information determined to be confidential [which] could cause financial and competitive harms to the disclosing party." Stip. Protective Order at 1. The Protective Order establishes two classes of information: Confidential Information and Attorneys' Eyes Only information. In the Protective Order, "confidential information" means trade secrets and/or information that concerns or relates to sales, marketing, manufacturing or research and development, financial performance, manufacturing or other costs of doing business, licenses or other confidential agreements, technical details of products or methods of doing business, and manufacturers and/or suppliers, and/or corporate information, such as relating to mergers, acquisitions, and/or assets or purchases which is of a non-public nature and disclosure of which would cause harm to the disclosing party's business operations or the business operations of a party in privity with the disclosing party, or provide improper advantage to others. Information not in the public domain that is "so proprietary or competitively sensitive that [its] disclosure to a competitor could cause substantial competitive injury, or the disclosure of which would violate an obligation of confidentiality to a third party, including a court" may be further designated "Attorneys' Eyes Only." Nothing in the Protective Order prohibits access by Plas-Tool's designee, Mr. von Holdt, to material designated "Attorneys' Eyes Only" if Plas-Tool claims that such designated material contains, reflects, was derived from, or relates to information which was misappropriated by or wrongly provided to Defendants and provided that Mr. von Holdt executes the Undertaking attached to the Protective Order.

## DISCUSSION

The Federal Rules of Civil Procedure permit "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 30 (1984). "Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties." Id. The Supreme Court has recognized that the liberal discovery rules "may seriously implicate privacy interests of litigants and third parties." Id. at 34.

This Court may, however, "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed. R. Civ. P. 26(c)(7). For example, "a court may order that confidential information not be disclosed to the client by the attorney." 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2041 (2d ed. 1994). The prerequisite is a showing of good cause by the person seeking protection. Good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987). To establish good cause, a moving party must show that disclosure of the information for which protection is sought "will result in a clearly defined and very serious injury." Andrew Corp. v. Rossi, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (Keys, MJ.). Moreover, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89,

5

102 n.16 (1981). Finally, a court has broad discretion in fashioning appropriate protective orders. Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc., 784 F.2d 1325, 1346 (7th Cir. 1986).

The documents at issue are documents responsive to Plaintiffs' document requests to A-1. The documents that Plaintiffs requested from A-1 would include all documents in A-1's files relating to Central's plastic paint can project, including but not limited to, the work that A-1 performed for Central and all information that Central provided to A-1, including the design work performed by Central and/or Precise. A-1 has refused to produce the responsive documents on the grounds that it is prohibited from doing so by the terms of its confidentiality agreement with Central. In its Memorandum, Central states that is willing to produce documents relevant to this lawsuit but seeks to limit access to Central's confidential information to Plas-Tool's attorneys and/or consulting experts and to prohibit Mr. von Holdt from access to Central's confidential information. Central also seeks to limit copying of its documents to those documents "directly related to the trade secrets allegedly misappropriated by A-1 from Plas-Tool," and objects to producing the design work and alleged trade secret information generated by Central prior to the retention of A-1. Joint Motion ¶ 5(c), (d).

Plaintiffs argue that the current Protective Order sufficiently protects Central's interest in maintaining the confidentiality of its documents. For purposes of this Opinion, this Court assumes, without deciding, that Central's documents contain information "not in the public domain that is so proprietary or competitively sensitive that [its] disclosure to a competitor could cause substantial competitive injury."[2] Plas-Tool points out that A-1 could designate the responsive Central

---

[2] Plaintiffs argue that Central's submissions do not sufficiently demonstrate that the information sought here is a trade secret under Illinois law. See 765 ILCS 1065/2. Plaintiffs point out that Mr. Kline's affidavit does not state what documents were generated during the plastic

documents under the Protective Order's "Confidential-Attorneys' Eyes Only" provision. This would limit access to Plaintiffs' attorneys and experts, but would also allow Plaintiffs' representative, Mr. von Holdt, to view the materials designated thereunder. Plaintiffs maintain that Central and A-1's request for a more restrictive protective order regarding Central's documents in A-1's possession is unwarranted.

The Court finds that Mr. von Holdt should not be precluded from access to Central's information. Central has not carried its burden of demonstrating that the risk of injury to Central from disclosure under the existing protective order outweighs Plas-Tool's need for Mr. von Holdt to have access to Central's confidential information for purposes of this litigation. Central contends that it would suffer "irreparable harm" if its confidential business information were revealed to Mr. von Holdt. Central's claim is supported by the affidavit of Central's President, Terry L. Kline. Mr. Kline's affidavit states: "The Central plastic container project is in its final stages. If any of the designs, information or processes developed by Central are disclosed at this point in time, such a disclosure could cause severe economic and strategic damage to Central. In particular, the disclosure of Central's proprietary information related to the plastic container project to a competitor in the industry would cause irreparable injury to Central." Kline Aff. ¶ 10. Mr. Kline's conclusory assertion that Central will suffer irreparable harm if its information is shown to Mr. von Holdt is

---

container project or during Central's engagement of Precise or A-1, or disclose the nature of the services provided on the project, the type of information contained in the responsive documents, whether all of the documents contain trade secrets, or the nature of any purported trade secrets. Pls' Opp. at 9. Mr. Kline also fails to state that all of the responsive documents were kept confidential. He does not state whether the responsive documents fall within the confidentiality agreements, that the responsive documents were in fact kept confidential, the manner in which they were kept confidential and to whom they were shown. Id. The Court need not address the sufficiency of Central's trade secret showing because the Court's decision would be the same if Central's information includes trade secrets.

insufficient to justify the restrictive protective order provisions sought here. Mr. Kline does not provide any facts supporting his broad conclusions and fails to offer any specificity as to the nature of the "irreparable harm" Central would allegedly suffer. Central's submissions fail to demonstrate that it is likely to suffer any harm, let alone a clearly defined and serious injury, from disclosure of its confidential business information to Mr. von Holdt.

Central's claim that it would suffer competitive injury if the responsive documents were shown to Mr. von Holdt is also unsupported by further evidence in the record. There has been no showing that Plas-Tool might use Central's information. Plas-Tool is not a competitor of Central and has no use for Central's confidential business information. von Holdt Aff. ¶8. Mr. von Holdt's unrebutted affidavit states: "Plas-Tool is not in the business of manufacturing pails, including paint cans, for commercial sale. As such, Plas-Tool is not in the same business as, or a competitor of, Central Can." von Holdt Aff. ¶ 1. Central's claim in its pleadings that Plas-Tool is a competitor with Central is unsupported by any facts in the record. The fact that Plas-Tool has been associated with a competitor of Central does not alter the Court's ultimate conclusion that Mr. von Holdt should be given access to Central's confidential information.[3] See IJR v. Sodick, Inc., 1987 WL 26105, at *2 (N.D. Ill. Nov. 24, 1997).

Moreover, Plas-Tool has demonstrated that it will be prejudiced if Mr. von Holdt cannot have access to Central's confidential information. Plas-Tool has a significant interest in utilizing Mr. von Holdt's expertise in this case. Mr. von Holdt has specialized knowledge. Mr. von Holdt is an inventor of several patents on plastic paint containers, and was a principal developer of Plas-Tool's

---

[3] Plaintiffs acknowledge that the licensee of Plas-Tool's plastic paint container trade secrets "may be" a competitor of Central.

8

Plastic Paint Container Trade Secrets. von Holdt Aff. ¶ 10. Mr. von Holdt states that he is the "preeminent expert in this field, and the best qualified to review the Responsive Documents on Plaintiffs' behalf." Id. His expertise and experience in the area of paint can technology is unrebutted in the current record. Given the technical nature of this case and Mr. von Holdt's expertise, his ability to advise counsel concerning technical matters could be essential to the proper handling of this case. Mr. von Holdt is also the person who has been preparing this case for Plaintiffs and the principal contact with Plaintiffs' attorneys. Id. Mr. von Holdt has further signed an Undertaking agreeing to be bound by the Protective Order in this case, and has testified under oath in his Affidavit that he would not use any of Central's trade secrets for commercial gain. von Holdt Affidavit at ¶ 8.[4]

Finally, the Court rejects Movants' assertion that "Central's documents will have little or no bearing on the issues raised in Plaintiffs' lawsuit." Plaintiffs allege that Arciniegas and A-1 misappropriated Plas-Tool's trade secrets. Plaintiffs believe that A-1's work for Central has been directed and/or performed by Arciniegas, and that the Plas-Tool's plastic paint container trade secrets have been utilized. The documents relating to the design work performed prior to Central's retention of A-1 are also relevant. Any document in A-1's file may have been reviewed and relied upon by A-1 in doing its work. Without the prior work, Plaintiffs cannot determine A-1's contribution to

---

[4] "Of course, violations of the protective order's provisions are subject to the full range of sanctions available pursuant to the Federal Rules of Civil Procedure and the inherent power of the court." Excellus Health Plan, Inc. v. Tran, 222 F.R.D. 72, 74 (W.D. N.Y. 2004); see also Arnold v. Cargill Inc., 2002 WL 1949911, at *2 (D. Minn. Aug. 19, 2002) (stating "Plaintiffs' failure to abide by the terms of the Protective Order could result in sanctions including, but not limited to, fines, attorney fees, resulting damages, and, ultimately exclusion of evidence at trial. These protections are sufficient to protect Defendant from Plaintiffs' potential misuse of Confidential or Attorneys' Eyes Only Information.").

Central's project. Central's documents are relevant to Plaintiffs' trade secrets misappropriation claims.

In sum, Central has not demonstrated that any harm would occur to its business interests as a result of disclosure of its confidential business information to Mr. von Holdt within the parameters of the protective order already in place. However, in light of Plas-Tool's association with a competitor of Central and in order to maximize the protection of Central's confidential business information, the Court orders the following additional conditions regarding Mr. von Holdt's review of Central's information which will not prejudice Plaintiffs' ability to prosecute their case:

1. Mr. von Holdt will be permitted to review Central's information at the office of Plaintiffs' counsel only.

2. No notes or copies of Central's information shall be made for Mr. von Holdt.

3. Mr. von Holdt will not be permitted to remove Central's information from the office of Plaintiffs' counsel.

4. Mr. von Holdt is prohibited from using Central's information for any purpose other than this litigation. Mr. von Holdt is ordered not to use Central's information for any business, proprietary, commercial or competitive purpose.

5. Plaintiffs' counsel shall provide Mr. von Holdt with a copy of this Opinion and shall explain to him its contents and requirements.

## CONCLUSION

For the reasons stated above, A-1 and Central have not demonstrated that is it necessary to limit the disclosure of the Central's confidential business information to Plas-Tool's counsel and experts. The Joint Motion for Protective Order is denied. The production of responsive documents

concerning Central's confidential business information shall be governed by the existing Protective Order and the additional conditions set forth herein. A-1 is ordered to produce all documents concerning Central responsive to Plaintiffs' document requests, including those owned by Central prior to the retention of A-1 as a design consultant in August of 2004.

E N T E R:

*[signature]*
**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: June 22, 2005**