# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN W. VON HOLDT, JR., JANICE ANDERSON, and PLAS-TOOL CO., ) ) ) Plaintiffs ) ) v. ) ) A-1 TOOL CORPORATION, ALFONSO ) ARCINIEGAS, GEOFFREY LUTHER, ) and LEROY LUTHER ) ) Defendants. ) | Case No. 04 C 4123<br>Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

This patent infringement, misappropriation of trade secrets, and breach of fiduciary duties case is before the Court on Plaintiffs' Motion to Compel, Defendants' Motion to Compel, and Defendants' Motion for a Protective Order. For the reasons that follow, Plaintiffs' Motion to Compel [45-1] is granted in part and denied in part, Defendants' Motion to Compel [57-1] is granted in part and denied in part, and Defendants' Motion for a Protective Order [89-1] is granted in part and denied in part.

## BACKGROUND

Plaintiff Plas-Tool Co. ("Plas-Tool") is in the business of designing plastic pails and lids, and designing, manufacturing and selling complex plastic-injection molds for producing plastic buckets or pails and lids for sale to bucket or pail and lid manufacturers. Plaintiff John von Holdt, Jr. ("von Holdt") is the president and chairman of the board of Plas-Tool and the co-owner of various patents. Von Holdt and Plaintiff Janice Anderson are co-owners of U.S. Patent No. 4,512,493 ("the '493 patent") entitled "Molded Bucket and Lid Having High Stack Strength." The '493 patent is licensed

solely to Plas-Tool.

Defendant A-1 Tool Corporation ("A-1") is "in the business of designing, manufacturing and selling plastic-injection molds for industrial and household products, other than pail molds." Third Am. Cmplt. ¶ 3. A-1 is wholly owned by Defendant Triangle Tool Corporation ("Triangle"). Id. ¶ 5. Since 1993, Defendant Geoffrey Luther has been President of A-1 and an officer of Triangle. Id. ¶ 7. Since that same time, Defendant LeRoy Luther has been an officer of A-1 and Triangle, and the majority shareholder of Triangle. Id. ¶ 8. Between 1978 and 1997, Defendant Alfonso Arciniegas ("Arciniegas") was employed by Plas-Tool first as a mechanist, then a computer numerical control programmer, and from 1989 through November 1997, was Vice-President of Plas-Tool. Arciniegas was also a director and shareholder of Plas-Tool from 1991 until his resignation. Since approximately December 1, 1997, Arciniegas has been employed by A-1.

In this lawsuit, Plaintiffs allege, among other things, that Defendants have "misappropriated Plas-Tool's confidential customer information, including but not limited to, customer names, contact persons, phone numbers, addresses, and even intimate details (i.e. birthdates, family member names, etc.) of Plas-Tool's customers and its employees." Initial Status Report filed August 6, 2004 at 2. Plaintiffs further allege that "Defendants have misappropriated Plas-Tool's confidential customer product information, including but not limited to, photographs and drawings of various pail and lid product designs and mold designs, standard sales price information, product testing information, molding material information, molding equipment information, molding parameters and conditions (including information relating to specialized techniques for the design and making molds that are

used to make pails and lids), and pail and lid auxiliary component information."[1] Defendants deny Plaintiffs' allegations.

On August 16, 2004, A-1 served its First Set of Interrogatories. A-1's Interrogatories 1-3 requested the following information:

> **Interrogatory No. 1**: Identify with particularity each trade secret that Plas-Tool alleges that any of the Defendants misappropriated.
>
> **Interrogatory No. 2**: For each of the trade secrets identified in response to Interrogatory No. 1, identify how the trade secret was misappropriated and by whom and all facts, witnesses and documents supporting your response.
>
> **Interrogatory No. 3**: For each trade secret identified in response to Interrogatory No. 1, identify the manner in which that trade secret information derives independent economic value from not being generally known to and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use.

Plaintiffs served their responses on September 15, 2004. On September 23, 2004, Defendants requested a supplementation of Plaintiffs' response to Interrogatory No. 1. Defendants believed that Plaintiffs' response to Interrogatory No. 1 provided only a "general description of the type of information or technology, but failed to identify with any specificity the trade secrets, themselves." Noel Decl., Exh. 5. The parties thereafter held conferences regarding various discovery issues,

---

[1] Plaintiffs additionally allege that "Defendants A-1 and Alfonso Arciniegas have made, had made, used and/or sold plastic buckets that infringe one or more claims of the '493 patent, and did so for the purpose . . . of selling and offering for sale pail molds for manufacture of plastic pails within the scope of one or more claims of the '493 patent and having no other use but the manufacture of such pails." Initial Status Report filed August 6, 2004 at 2. Plas-Tool also alleges a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.* against A-1 and Arciniegas, breach of fiduciary duty against Arciniegas, inducement of breach of fiduciary duty against Geoffrey Luther, LeRoy Luther, A-1, and Triangle, tortious interference with business expectancies against Arciniegas, and conspiracy to tortiously interfere with business expectancies against all defendants.

3

including Interrogatories 1-3. On November 23, 2004, Plaintiffs supplemented their answers to Interrogatory No. 1.

On January 21, 2005, Plaintiffs supplemented their responses again. Plaintiffs' January 21, 2005 Supplemental Responses to Interrogatory No.1 identified 24 categories of technical trade secrets – 12 related to molds that make pails and 12 related to molds that make pail lids. Plaintiffs maintain that their supplemental responses also provided "a thorough description of the customer trade secrets that Defendants had misappropriated." Pls' Motion to Compel at 7. Defendants state that these supplemental responses "described some of the alleged trade secrets with more specificity, [but] failed to described all the trade secrets at issue." Defs' Private Brief in Support of Defs' Motion to Compel at 5. By email dated February 3, 2005, defense counsel notified Plaintiffs' counsel of deficiencies in Plaintiffs' identification of Pail Trade Secret 1, Pail Trade Secret 11 and Lid Trade Secret 11, Pail Trade Secret 12 and Lid Trade Secret 12, Pail Trade Secret 4, Lid Trade Secret 6, and Pail Lid Secrets 9 and 10. Noel Dec., Exh. 25. Defense counsel also stated that she believed Plaintiffs' response to Interrogatory 3 remained deficient because Plaintiffs failed to provide an "explanation on how any of the individual purported trade secrets derive economic value from not being generally known to and not being readily ascertainable by proper means." Id.

On February 17, 2005, Plaintiffs responded to Defendants' email of February 3, 2005 and supplemented their list of trade secrets a third time. Plaintiffs also produced an additional 3,300 pages of documents as well as a CD containing CAD information and IGES files. Plaintiffs stated: "This is the last supplementation of trade secrets that Plaintiffs will make." Noel Dec., Exh. 26. Plaintiffs reiterated their demand to begin depositions. Defendants admit that Plaintiffs' most recent disclosures are "an improvement from prior disclosures," but complain that "the modified list of 24

categories of purported 'technical trade secrets' contains many vague and ambiguous statements, cites to documents that do no match the narrative descriptions, provides 'examples' of trade secrets and expressly contemplates dozens of others without identifying them, and incorporates huge volumes of documents." Defs' Private Reply in Support of Defs' Motion to Compel at 6. Defendants also point out that Plas-Tool's list of customer identities (P 63684-63690) contains only customer names, addresses, and contact information and does not identify customer personal information, product designs, requirements, sales histories, and experiences. Moreover, this six page customer list was "never singled out or specifically discussed until Plaintiffs' brief." Id. at 13.

On February 23, 2005, Defendants indicated that they believed that Plas-Tool "has still not properly identified its purported trade secrets." Noel Dec., Exh. 30. Defendants stated that they intended to send a detailed response to Plaintiffs' letter dated February 17, 2005 and seek clarification or supplementation as to any issues which may exist regarding the modified identification of technical trade secrets in the very near future. Id. Defendants requested that Plaintiffs address several issues regarding Plas-Tool's latest supplementation "right away." Id. By letter dated March 10, 2005, Defendants sought further clarification or supplementation as to the issues raised by plaintiffs' identification of technical trade secrets dated February 17, 2005.

On March 10, 2005, Plaintiffs filed their Motion to Compel. Plaintiffs' Motion to Compel contends that Defendants have unjustifiably and unilaterally precluded deposition discovery in this case until they are satisfied with the sufficiency of Plaintiffs' identification of trade secrets. Plaintiffs' Motion essentially seeks an order requiring defendants to proceed with depositions without requiring further supplementation of their answers to A-1's Interrogatories 1-3. On March 21, 2005, Defendants filed their Motion to Compel and Motion for Protective Order. Defendants'

5

Motion to Compel seeks an order requiring Plas-Tool to supplement its responses to A-1's Interrogatories 1-3. Defendants' protective order motion seeks to preclude Plaintiffs from taking depositions regarding the alleged trade secrets at issue until Plaintiffs fully respond to A-1 Interrogatories 1-3.[2]

## DISCUSSION

Defendants allegedly misappropriated Plas-Tool's trade secrets. A trade secret is information that "is sufficiently secret to derive economic value . . . from not being generally known to other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 735 ILCS 1065/2(d)(1) and (2). Thus, to establish the existence of a trade secret, plaintiffs must show that: (1) the information is sufficiently secret to derive economic value; (2) the information is not within the realm of general skills and knowledge of the relevant industry; and (3) the information cannot be readily duplicated without involving considerable time, effort, or expense. Computer Care v. Service Sys. Enterprises, Inc., 982 F.2d 1063. 1072 (7th Cir. 1992). To prevail on their misappropriation claim, plaintiffs must prove that the information at issue was "(i) secret (that is, not generally known in the industry), (ii) misappropriated (that is, stolen from it rather than developed independently or obtained from a third source), and (iii) used in the defendants' business." Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265-66 (7th Cir. 1992).

---

[2] Defendants complain that Plaintiffs violated Local 37.2 by failing to confer with them regarding the Amended Rule 30(b)(6) Notice prior to seeking court intervention. In this instance, the Court exercises its discretion to excuse any alleged failure to comply with Local Rule 37.2. Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir.1995) (stating "decision whether to apply [a local] rule strictly or to overlook any transgression is one left to the district court's discretion.").

The current dispute concerns the level of specificity required for interrogatory responses identifying misappropriated trade secrets before access to the deposition process. Defendants argue that the law requires "a greater level of detail than that given by Plaintiffs." Defs' Public Reply at 2. Plaintiffs respond that they have meet their burden by identifying the misappropriated trade secrets with the requisite particularity.

Federal Rule of Civil Procedure 33 governs the use of interrogatories. Rule 33(b)(1) requires a party to answer each interrogatory "separately and fully." Rule 33(d) allows a party to designate business records in response to an interrogatory when "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." "Rule 33 is intended to enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at the trial." Wright, Miller, & Marcus, Federal Practice and Procedure: Civil 2d § 2162 (2d ed. 1994). "As a general rule a party in answering interrogatories must furnish information that is available to it and that can be given without undue labor and expense." Id. at § 2174.

There is no rule in the Federal Rules of Civil Procedure governing a plaintiff's identification of trade secrets with particularity. At the complaint stage, a plaintiff is not expected to plead its trade secrets in detail. IDX Systems Corp. v. Epic Systems Corp., 165 F. Supp.2d 812, 816 (W.D. Wis. 2001), rev'd in part on other grounds 285 F.3d 581 (7th Cir. 2002); see also Leucadia, Inc. v. Applied Extrusion Technologies Inc., 755 F.Supp. 635, 636 (D. Del. Feb. 7, 1991) (noting "[c]ourts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets."). There is no heightened pleading standard requiring plaintiffs to plead

7

all misappropriated trade secrets with particularity. See Fed. R. Civ. P. 9(b) (requiring plaintiffs to plead "with particularity" any "circumstances constituting fraud.").

The California Code of Civil Procedure requires a trade secret plaintiff to identify its misappropriated trade secrets with "reasonable particularity" "before commencing discovery relating to the trade secret." Cal. Civ. Proc. Code § 2019(d). This requirement has been held to be substantive and therefore applicable in diversity actions in federal court. Computer Economics, Inc. v. Gartner Group, Inc., 50 F.Supp.2d 980 (S.D. Cal. 1999). The Computer Economics, Inc. court observed that the rule requiring a plaintiff to disclose its trade secrets at the outset of discovery serves four purposes: (1) to promote well-investigated claims and dissuade the filing of meritless trade secrets complaints; (2) to prevent plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets; (3) to assist the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope; and (4) to enable defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." 50 F.Supp.2d at 985.

It is clear that "[b]y the summary judgment and trial stages plaintiff must describe its trade secrets in sufficient detail such that a reasonable jury could find that plaintiff established each statutory element of a trade secret." IDX Systems Corp., 165 F.Supp. at 817. The Seventh Circuit has spoken in terms of requiring an identified list of particularized trade secrets "prior to trial." AMP, Inc. v. Fleischhacker, 823 F.2d 1199, 1203 (7th Cir. 1987). It has recognized that a plaintiff must ultimately identify specific trade secrets to succeed on a trade secret claim. Id. (stating "AMP has consistently failed throughout this litigation to identify any particularized trade secrets actually

at risk"). "It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." Composite Marine, 962 F.2d at 1266; see also IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 584 (7th Cir. 2002) (stating that a plaintiff seeking trade secret protection, must engage in a "serious effort to pin down the secrets.").

In IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581(7th Cir. 2002), the plaintiff alleged that defendants misappropriated its trade secrets relating to its software for use in managing the financial side of a medical practice. The plaintiff identified its purported trade secrets in "a 43-page description of the methods and processes underlying and the inter-relationships among various features making up IDX's software package." Id. at 583. The district court found that plaintiff had failed to identify with specificity its trade secrets that it accused the defendants of misappropriating and granted summary judgment to defendants on the trade secret claim. Id. The Seventh Circuit held the plaintiff's trade secret description was not specific enough. "It is has been both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret." Id. at 583. The district court's grant of summary judgment in favor of the defendants was affirmed. Id. at 583-84.

In this case, the parties and their experts are obviously more familiar than the Court with the complex technology at issue. At this stage of the litigation and given the current record, the Court is not in a position to judge whether plaintiffs' trade secret description supports trade secret protection under the Seventh Circuit's standards. Indeed, "[n]o such burden was intended to be placed on the Court during discovery." Struthers Scientific and International Corp. v. General Foods Corp., 51 F.R.D. 149, 152 (D. Del. 1970) (stating that during the discovery stage where the parties

are attempting to define and sharpen the issues for trial, "[t]he Court cannot on any valid basis, from its own knowledge or otherwise, at this time determine whether or not the 103 separate items of information listed in the answer are bona fide trade secrets of [plaintiff].").

The Court can find with confidence, however, that Plaintiffs' identification of Plas-Tool's technical trade secrets generally differs from the specifications criticized or rejected in various cases. For example, in Porous Media Corp. v. Midland Brake, Inc., 187 F.R.D. 598, 600 (D. Minn. 1999), the plaintiff merely listed it trade secrets as: (1) detailed manufacturing drawings of the Porous canister and coalescer; (2) detailed drawings of a new Porous canister; (3) research and test data provided to defendant; (4) manufacturing process information; (5) a patentable idea for a new canister; and (6) the entire process for the design and manufacture of the old and new canister and coalescer." The Magistrate Judge had no difficulty concluding that "these generalized statements wholly fail to provide the particulars or specificity required by law . . . These lists do not afford the necessary detail by which it may be tested as to whether any of the items even constitutes a trade secret, and if so whether any Defendant possesses or uses that trade secret, or may be enjoined from using it." Id.

Similarly, the district court in Struthers Scientific found the following identification of a unique combination of otherwise known components insufficiently specific: "some disclosures are in the combinations of the various individual items into working units, and the combinations of such working units in turn into a freeze concentration operating system." 51 F.R.D. at 153. The district court ordered the plaintiff "to specifically describe what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination." Id; see also Automed Tech., Inc. v. Eller, 160 F.Supp.2d 915, 926 (N.D. Ill. 2001) (Moran, Senior J.),

10

(finding plaintiff's reference to its software, design plans and research and development related to three research projects did not satisfy plaintiff's burden of "identify[ing] with reasonable particularity" the trade secrets that have been misappropriated). Plaintiffs here have done much more than simply identify all technology used to make pail and lid molds and direct Defendants to find the trade secrets. IDX Sys. Corp., 285 F.3d at 584 (stating that a plaintiff seeking trade secret protection, "must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition."). The Court also recognizes that Defendants have legitimate requests for clarification and supplementation regarding Plaintiffs' latest description of the trade secrets at issue which have not yet been addressed by Plaintiffs.

Under Federal Rules of Civil Procedure 26(c) and (d), the Court has the discretion to control the sequence, scope, and timing of discovery. See also Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (stating "[d]istrict courts have broad discretion in matters relating to discovery). After considering all of the issues raised by the parties' submissions, the Court issues the following rulings governing the sequence and schedule of the remainder of fact discovery. By June 15, 2005, Plaintiffs shall, to the fullest practicable extent, provide a meaningful response to the concerns raised by Defendants' letters dated February 23, 2005 and March 10, 2005 and their pleadings associated with the current motions and where appropriate, provide a more comprehensive identification of trade secrets and answers to the other interrogatories at issue.[3] Allowing depositions

---

[3] Plaintiffs also have a continuing duty to supplement interrogatory responses. Rule 26(e)(2) requires plaintiffs to "seasonably amend a prior response to an interrogatory" if they learn that the response "is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." If a party without substantial justification fails to amend a prior response to discovery as required by Rule 26(e)(2), that party "is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R.

11

to proceed without delay after Plaintiffs address the latest concerns raised by Defendants will not prejudice Plaintiffs in any way nor defeat any of the purposes of the disclosure rule identified by the Computer Economics court.[4]

Counsel shall immediately begin scheduling depositions to proceed shortly after June 15, 2005.[5] Counsel shall continue to meet and confer regarding any further good faith dissatisfaction by Defendants with Plaintiffs' interrogatory answers, but this is not a proper basis for Defendants refusing to proceed with depositions after June 14, 2005. A month before the close of fact discovery, plaintiffs must provide defendants with a final, detailed itemization of all trade secrets claimed to be at issue.[6] See Lynchval Systems, Inc. v. Lyncy, 1996 WL 735586 (N.D. Ill. Dec. 19, 1996) (Manning, J.) (upholding magistrate judge's imposition of sanctions for plaintiff's failure to adhere to the court's requirement of a final binding statement identifying plaintiff's trade secrets at issue before the close of fact discovery). Unless excused by the Court for good cause, Plaintiffs' trade secret claim will be limited to the specific information identified in their final itemization.

Finally, the Court offers a few general observations regarding Plaintiffs' obligation to identify Plas-Tool's trade secrets. Plaintiffs must present an itemization of all trade secrets claimed to be at issue in this case. Nonexhaustive examples are not enough to discharge plaintiffs' ultimate burden.

---

Civ. P. 37(c)(1).

[4] The Court rejects Plaintiffs' assertion that Arciniegas' employment history and experience with both Plas-Tool and A-1 Tool gives Defendants' adequate notice of the trade secrets at issue and excuses Plaintiffs from any further identification of the trade secrets at issue.

[5] Counsel shall agree on a deposition schedule and witnesses may be produced in any order except that Plaintiffs are free to begin their depositions with the witnesses previously noticed for depositions by Plaintiffs (A-1 30(b)(6) deponent, Femali, Clements, and Maria Arciniegas).

[6] Fact discovery is currently set to close on September 2, 2005.

12

See Struthers Scientific & Int'l Corp., 51 F.R.D. at 154 (finding insufficient plaintiff's "catch-all" response to interrogatory seeking description of each trade secret at issue and requiring plaintiff to specifically describe the particular combinations of components which constitute trade secrets); IMAX Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1167 (rejecting plaintiff's contention that the use of the catchall phrase "including every dimension and tolerance that defines or reflects that design" in its discovery responses "achieved the level of specificity necessary to identify the numerical dimensions and tolerances as trade secrets."). Where Plaintiffs refer to documents or drawings in their identification of trade secrets, they must state with specificity which documents or drawings are at issue. Lynchval Systems Inc., 1996 WL 735586, at * 6 (holding that plaintiff's "reference to numerous documents containing a plethora of potential trade secrets" did not satisfy the court's requirement that plaintiff specifically identify each allegedly misappropriated trade secret); Multimedia Cablevision, Inc. v. California Security Co-Op, Inc. 1996 WL 447815, at * 2 (D. Kan. July 30, 1996) (holding respondents not permitted to answer interrogatories by referring to broad classes of documents with no indication of where trade secrets are located with specificity).

Lastly, no sanctions will be imposed. The Court finds that an award of sanctions would be unjust. The record demonstrates that to date, Plaintiffs have generally attempted to respond to Defendants' concerns and provide details regarding the purported trade secrets at issue. The Court believes that Plaintiffs' identification of their trade secrets has been focused and refined in good faith through the discovery process. There is no binding precedent regarding the level of detail required of trade secret disclosures prior to conducting depositions. Defendants also had a good faith basis for seeking disclosure of the purported trade secrets with more particularity before beginning deposition discovery on the issue of the trade secrets. Any failure to disclose was harmless at this

stage of the proceedings.

Moreover, until the current flurry of motions, counsel had been working together amicably to resolve discovery disputes. A good summary of the status of discovery prior to the recent motions is found in paragraph 2 of the Joint Motion for Extension of Discovery Schedule, filed on January 27: "Since the inception of the action, the parties have worked diligently to complete written discovery in what has proven to be a document-intensive and technically complex case. The parties have issued and responded to multiple sets of written discovery, have conducted numerous meet and confer conferences to avoid discovery motions, and have issued several subpoenas on third-parties." The Court urges counsel to continue to confer with each other in good faith regarding discovery disputes. Whenever possible, compromise and attempt to resolve disputes without court intervention.

## CONCLUSION

For these reasons, Plaintiffs' Motion to Compel [45-1] is granted in part and denied in part, Defendants' Motion to Compel [57-1] is granted in part and denied in part, and Defendants' Motion for a Protective Order [89-1] is granted in part and denied in part.

**E N T E R:**

*Nan R. Nolan*
**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: June 1, 2005**