# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN W. VON HOLDT, JR, JANICE ANDERSON and PLAS-TOOL CO., | ) ) ) |
| Plaintiffs, | ) No. 04-C-4123 ) |
| v. | ) ) |
| A-1 TOOL CORPORATION, TRIANGLE TOOL CORPORATION, ALFONSO ARCINIEGAS, GEOFFREY LUTHER, and LEROY LUTHER, | ) Judge Blanche M. Manning ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

John W. Von Holdt, Janice Anderson, and Plas-Tool Company (collectively, "the plaintiffs") allege that A-1 Tool Corporation, Triangle Tool Corporation, Alfonso Arciniegas, Geoffrey Luther, and LeRoy Luther (collectively, "the defendants"), among other things, infringed U.S. Patent No. 4,512,493 ("the '493 patent"), which is entitled "Molded Bucket And Lid Having High Stack Strength." The parties requested a claim construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("Markman hearing"), which this court referred to the magistrate judge. On May 22, 2008, Magistrate Judge Brown conducted the Markman hearing, and subsequently issued a report and recommendation on the construction of the claims in dispute, *see* Report and Recommendation, No. 04-C-5622 (N.D. Ill. Nov. 20, 2008)("R&R"). The defendants timely objected to the R&R pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72. Those objections are now before the court.

## I. Facts

The '493 patent is entitled "Molded Bucket And Lid Having High Stack Strength." The purpose of the design is to establish "exceptional stacking strength so that even though the bucket is made of plastic material, large, heavy, filled buckets of the design of this invention can be stacked twelve or thirteen high without distortion or collapse of the lowest bucket in the stack." '493 Patent at Col. 1:26-32. The claims currently at issue in the '493 patent, Claims 5, 6, and 7, involve the transition area from the bottom to the sidewall of the bucket, and the ribs that are on the bottom of the bucket to provide strength. Tr. at 7-9, Def. Appx. Exh. 7. Those claims are as follows, with the terms in bold being the subject of the defendants' objections to the R&R:

> 5. A **molded bucket** comprising:
> a tapered sidewall defining the sides of the bucket and
>     forming an open mouth having an annular projection at said mouth;
> an integral bottom coupled to said sidewall at a transitional area;
> said transitional area being molded with **a relatively large radius** and having
>     a thickness approximately equal to the thickness of said bottom;
> said radius and thickness preventing stress concentration from weakening the
>     bucket;
> wherein said transitional area curves upward longitudinally to said sidewall,
>     an annular sidewall continuously extending around said bottom **in alignment**
>     with said sidewall, said annular wall having a bottom edge forming a lower
>     support surface projecting beyond the bottom surface of said bucket; and
> a plurality of ribs arranged around the bucket and extending between said
>     annular wall and the radial outer portion of said bottom.
>
> 6. The molded bucket according to claim 5 wherein said ribs are arranged in a diagonal orientation forming **side-by-side generally V-shaped ribs**.
>
> 7. The molded bucket according to claim 5 further including radial ribs.

'493 Patent at Cols. 6:62 – 7:19 (emphasis added).

## II. Standard of Review

The defendants contend that the magistrate judge's determinations must be reviewed *de novo*. *Goss Int'l Americas, Inc. v. Graphic Mgmt. Assoc., Inc.*, No. 05-C-5622, 2008 WL 2410426,

at *1 (N.D. Ill. Jun. 11, 2008). Under Fed. R. Civ. P. 72, the determination of whether this court performs its review under a clear error or *de novo* standard is based on whether the issue decided is dispositive. This case was referred to the magistrate judge to conduct a Markman hearing under 28 U.S.C. § 636(b)(3), which allows the magistrate judge to perform "such additional duties as are not inconsistent with the Constitution and laws of the United States." The magistrate judge interpreted this reference to require the issuance of a R&R pursuant to § 636(b)(1)(B), objections to which require *de novo* review by this Court.

Given the fact that claim construction is likely dispositive of the plaintiffs' claims of infringement, this Court will review the magistrate judge's R&R *de novo*. *See* 12 Fed. Prac. & Proc. Civ. 2d § 3068.2 ("Rule 72 is thus in keeping with the legislative intent [of 28 U.S.C. § 636]: at the very least, the eight motions listed in the statute will be governed by the procedures and *de novo* review of Rule 72(b), and these procedures should also apply to any other pretrial matters or other 'additional duties' that, in a particular case, may be 'dispositive of a claim or defense of a party.'"). *See also Shuffle Master v. Vendingdata*, No. 2:04-CV-01373-BES-LRL, 2007 WL 674290, at *1 (D. Nev. Feb. 28, 2007)(noting that the court was compelled to review *de novo* the magistrate judge's R&R on a Markman hearing pursuant to 28 U.S.C. § 636(b) and that "[t]his standard is consistent with that which is applied in the [*de novo*] review of claim constructions made pursuant to [the *Markman* decision]")(citations omitted).

**III. Analysis**

The defendants' objections can be separated into two separate categories. First, the defendants claim that the court did not construe, but should have, two disputed terms: "molded bucket" and "side-by-side." The second category of objections are those which challenge the

magistrate judge's construction of three terms: "a relatively large radius," "in alignment," and "generally V-shaped ribs." The court will address these two categories of objections in turn.

    A. Should the magistrate judge have construed the terms "molded bucket" and "side-by-side?"

        1. "[M]olded bucket" of Claim 5

Claim 5 includes the term "molded bucket." The defendants argue that the magistrate judge erred in failing to construe the term "molded bucket," and ask this court to do so. Specifically, the defendants ask this court to reject the plaintiffs' contention that the term "molded bucket" includes the mold used to make the bucket.

Before the magistrate judge, the plaintiffs initially contended that the patent covered buckets as well as molds. Pls.' Claim Chart at 2, Dkt #413. However, the plaintiffs subsequently agreed that the issue of whether the patent covers molds to make buckets, as well as buckets, was not an issue of claim construction but rather an issue of applying the claims to a product. Tr. at 59-60, Def. Appx. Exh. 7. At the hearing, the magistrate judge did not construe the term "molded bucket" apart from its ordinary meaning, stating, "I'm going to find as a matter of claim construction that both parties agree that the term 'molded bucket' means a molded bucket." Tr. at 71:19-21, Def. Appx. Exh. 7.

"It is well settled that claims may not be construed by reference to the accused device." *Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002). *See also Info. Tech. Innovation, LLC v. Motorola, Inc.*, 391 F. Supp. 2d 719, 730-31 (Fed. Cir. 2005). Moreover, a court does not fail to discharge its duty under *Markman* when a term does not require construction or does not depart from its ordinary meaning. *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001)(discussing that the district

court did not fail to discharge its duty when it declined to construe "melting" because the term did not require construction nor did it depart from its ordinary meaning, and the issue in dispute was the application of the melting step in the accused process, a factual question of infringement).

In this case, there is no dispute as to the ordinary meaning of the term "molded bucket." The plaintiffs conceded that a "molded bucket" means a molded bucket. Tr. at 70-71, Def. Appx. Exh. 7. To impose exclusions on the term "molded bucket," such as excluding molds, would be construing the terms in reference to the accused device. *See Neomagic Corp.*, 287 F.3d at 1073-76 (determining that the district court erred by examining the accused device before it construed the term "power supply" to mean that it must supply a constant voltage, which would exclude the accused device).

It is an issue for claim infringement whether or not the term "molded bucket" in Claim 5 can apply to bucket molds that could make potentially infringing buckets. *See Info. Tech.*, 391 F. Supp. 2d at 730-31 (where parties agreed on the ordinary meaning of the term "dynamic model" but the defendants wished to insert an exclusion to show that there was a distinction between the model itself and the data files that go into the model, determining that the defendants' exclusion was unnecessary and an issue for infringement, not claim construction). Therefore, the court concludes the meaning of the term "molded bucket" does not depart from its ordinary meaning and does not require further construction.

2. "[S]ide-by-side" of Claim 6

The defendants concede "side-by-side" means "one beside the other." Defendants' Objections at 4, 6. However, the defendants argue that the R&R ignored the dispute as to whether there can be "side-by-side" ribs that have an additional rib in between them. *Id*. at 4. The defendants contend that the magistrate judge erred by not construing the term and request that the

court construct "side-by-side" to mean that nothing can be in between the generally V-shaped ribs. *Id*. at 4, 6. The R&R states that both parties agree "side-by-side" means "one beside the other." R&R at 18. Therefore, the magistrate judge determined that there is nothing about the term requiring interpretation as a matter of law. *Id*.

Claim 6, at issue here, states that: "The molded bucket according to claim 5 wherein said ribs are arranged in a diagonal orientation forming *side-by-side* generally V-shaped ribs." The defendants assert essentially that the magistrate judge should have construed the term "side-by-side" in Claim 6 to mean that the ribs must abut with nothing in between. But, as noted above, there is no dispute as to the ordinary meaning of the phrase "side-by-side" and the court does not fail to discharge its duty under *Markman* when a term does not require construction or does not depart from its ordinary meaning. *Biotec*, 249 F.3d at 1349. Thus, the court agrees with the magistrate judge's conclusion not to construe the term as asserted by the defendants.

This is particularly true because to impose the construction that "side-by-side" ribs cannot have intervening radial ribs would be imposing a limitation on the claims not supported in the specification. The Federal Circuit has held:

> A fundamental rule of claim construction is that terms in a patent document are construed with the meaning with which they are presented in the patent document. Thus claims must be construed so as to be consistent with the specification, of which they are a part…[I]t is axiomatic that claims, not the specification embodiments, define the scope of protection.

*Playtex Prods., Inc. v. Procter & Gamble Co.,* 400 F.3d 901, 906 (Fed. Cir. 2005)(internal citations omitted). The claims and the specification support additional embodiments of side-by-side generally V-shaped ribs next to radial ribs.[1] '493 patent Cols. 7:12-19, 5:1-5; *KCJ Corp. v. Kinetic*

---

1 For example, instead of the pattern shown in Figure 10 of an intervening radial rib after every side-by-side generally V-shaped rib (i.e. VIVIVI), it is possible from the claim language for an embodiment to include a repeating pattern of an intervening radial rib after

*Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)("[A]lthough the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments.").

Construing "side-by-side" to mean that nothing can come between generally V-shaped ribs would be construing the terms in reference to an accused device, which is a question of fact not within the scope of a Markman hearing. *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1336 (Fed. Cir. 2008) (stating that the issue of infringement, whether literal or by the doctrine of equivalents, is a question of fact). Therefore, the court concludes that "side-by-side" means "one beside the other" and requires no further construction.

B. <u>Claim Construction</u>

As noted by the Federal Circuit, "[a]n infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman*, 52 F.3d at 970-71. As further stated by the Federal Circuit:

> the words of a claim "are generally given their ordinary and customary meaning." We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. . . .

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)(internal citations omitted). In other words, the inquiry into the meaning of a claim term begins with "the well-settled understanding that inventors are typically persons skilled in the field of the invention and patents are addressed to and intended to be read by others of skill in the pertinent art." *Id*. at 1313.

---

every two side-by-side generally V-shaped ribs (i.e. VVIVVIVV). '493 patent at Fig. 10.

In construing a claim, the court should look to the intrinsic record, which includes three sources: the claim, the specification, and the prosecution history. *Markman*, 52 F.3d at 979-80. Particularly, "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (citation omitted). *See also Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004)("In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention."). Although the claims must be construed to be consistent with the specification of which they are a part, the court must not import a limitation from the written description. *Playtex Prods.*, 400 F.3d at 906. The written description must be used for enlightenment and not to read a limitation from the specification. *Id*.

Courts may, in addition to the intrinsic evidence noted above, "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (citation omitted). Extrinsic evidence in the form of an expert opinion is useful if it is not conclusory or unsupported, and if it is not at odds with the rest of the claims and prosecution history. *Id*. at 1318 (quotation omitted). However, extrinsic evidence is "less significant" than intrinsic evidence when construing a claim. *Id.* With these principles in mind, the court will proceed with its review of the construction of the disputed claims.

    1. "[A] relatively large radius" -- Claim 5

A molded bucket comprising:
. . .
an integral bottom coupled to said sidewall at a transitional area;
said transitional area being molded with **a relatively large radius**

a. *Magistrate Judge's Ruling*

The magistrate judge determined that a person of ordinary skill in the art of plastic bucket molding would understand "a relatively large radius" to mean a single radius. R&R at 11. The magistrate judge first acknowledged that the term "a" or "an" in a patent claim generally means "one or more" at least in claims containing the word "comprising." *KCJ Corp.*, 223 F.3d at 1356. However, the magistrate judge looked to the language in Claim 5 of the '493 patent and noted that while the transition "comprising" appears in the claim, it does not appear in the limitation related to the phrase "a relatively large radius." R&R at 7. Although the magistrate judge noted that the use of the term "said," along with the use of the singular term "radius" rather than the phrase "radius or radii," does not mandate or implicate a singular meaning, she recognized that the meaning of the disputed term must also be determined by examining its fuller context in the specification. *Id*. at 8-9. In her examination of the specification, the magistrate judge noted that the term "radius" was used in the singular, which was also supported by one of the embodiments drawn in Figure 5. *Id*.

The magistrate judge then considered the testimony of the plaintiffs' expert, Mr. Beall, who has worked in plastics product and design for more than 40 years. *Id*. at 9-10. Mr. Beall testified that a person skilled in the art would not interpret a relatively large radius as having more than one radius, and instead, would create a single radius, blending the sidewall and bottom walls together. Tr. at 159-160, Def. Appx. Exh. 7. If there were more than one radius, Mr. Beall opined that it could cause potentially weak areas. *Id*. at 160. Moreover, the testimony from Mr. Beall revealed that the definition of "radius" from one skilled in the art of plastic bucket molding means

*arc*, which is contrary to the geometric definition of "radius," which is the distance between the center of the arc to the outside edge of the arc. *Id*. at 159, 169.

The defendants' witness, Wayne Milestone, testified that a curve has an infinite number of radii or distances between the center of the arc to the outside edge of the arc. However, Mr. Milestone admitted that he was familiar only with the geometric definition of "radius." *Id*. at 171.

After considering the testimony of both parties' expert witnesses, the magistrate judge accepted that the '493 patent intended to limit the term "radius" to the singular. R&R at 11. The magistrate judge agreed that the claim is intended to describe a single smooth curve to minimize potential stress points, which is supported by the opinion of Mr. Beall, who has extensive experience in the plastics industry. *Id*.

      b.  *The Defendants' Objections*

The defendants argue that the phrase "a relatively large radius" means one or more radii. Defs. Objections at 6. Specifically, the defendants first claim that the magistrate judge erred in failing to follow the rule that the words "a" or "an" in a patent claim carry the meaning of "one or more," and that there was not a clear intent to limit the article to the singular. *Id*. at 6-7. Second, the defendants claim that the magistrate judge erred by suggesting the '493 patent favors a singular interpretation of the term "a relatively large radius," and the R&R did not include evidence that the use of more than one radius in the transitional area would fail to accomplish these purposes. *Id*. at 8-9. Finally, the defendants assert that because the plaintiffs' expert, Glenn Beall, did not have evidence to support his testimony, the court should disregard his expert opinion. *Id*. at 9.

      c.  *This Court's Construction*

The Federal Circuit has stated that in open-ended claims containing the transitional phrase "comprising," the use of an indefinite article "a" or "an" in a claim generally carries the meaning of "one or more." *KCJ Corp.*, 223 F.3d at 1356. The subsequent use of the definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008). Only in circumstances when the patentee evinces a clear intent to limit the number of elements to "one" does the use the article "a" receive a singular interpretation. *KCJ Corp.*, 223 F.3d at 1356. The exception arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule. *Baldwin*, 512 F.3d at 1343. *See also Tivo, Inc. v. Echostar Commun. Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008) ("[T]he question whether 'a' or 'an' is treated as singular or plural depends heavily on the context of its use. The general rule does not apply when the context clearly evidences that the usage is limited to the singular.")(citations omitted).

Here, contrary to the defendants' position, the court concludes that the term "a relatively large radius" constitutes one of those exceptions. As an initial matter, while not discussed by either party, the court finds the use of the adjective "large" to be compelling. The claim indicates "a relatively large radius." If radius were to mean "one or more," then the use of the adjective "large" would have no purpose because including multiple radii decreases the size of each radius.

In addition, as noted by the magistrate judge, the word comprising does not modify the term "a relatively large radius." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007) (discussing that the word comprising "does not reach into each [element] to render every word and

phrase therein open-ended"). Thus, the general rule that the use of the indefinite article "a" or "an" carries the meaning of "one or more" is not necessarily applicable.

The defendants respond that even if "comprising" does not apply to the term "a relatively large radius," the term should still be construed to have a plural meaning because "clear evidence" in support of a singular meaning does not exist. The court disagrees. As noted by the magistrate judge, the use of the term "said", *see* '493 Patent at Col. 7:4 ("said radius and thickness…") supports a singular meaning because "it may reinforce the singular nature of the relatively large radius when examined within the framework of the claim, the specification, and the expert testimony." R&R at 8 (citation omitted).

Here, Figure 5 reflects only one radius. While it is true that the embodiment in the patent is not the only embodiment, *KCJ Corp.*, 223 F.3d at 1356, this points to a singular construction. Additionally, the patent claims, specification, and prosecution history use the term "radius" instead of "radii." The lack of the plural terminology for this term further supports the intent of the patentee to limit "a relatively large radius" to the singular. Moreover, as the magistrate judge noted, the purpose of the radius is expressly stated in the claim, that "said radius and thickness prevent[ ] stress concentration from weakening the bucket." '493 Patent at Col 7:4-5. In particular, the specification indicates a design which "establish[es] strong stacking strength and avoiding high stress points at sharp corners." R&R at 8.

According to the plaintiffs' expert, Mr. Beall, one radius would be stronger than multiple radii. The defendants challenge the reliance on Mr. Beall's testimony because he did no testing to support this assertion. However, it is permissible for this court in its sound discretion to admit and use expert testimony regarding the field of the invention to determine what a person of ordinary skill in the art would understand claim terms to mean. *Phillips*, 415 F.3d at 1318-19 ("[E]xtrinsic

evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field."). Mr. Beall's testimony simply educates this court as to the meaning of "radius" to one skilled in the art. Multiple radii applied to a plastic bucket, according to Mr. Beall, would mean imposing additional sources of weakness. Moreover, the defendants' expert, Mr. Milestone, admitted that he had no knowledge of the term radius as used in the plastics industry, and that his testimony was based on the use of the term radius as it is used in geometry.

For all these reasons, the court concludes, based on the language of the specification as supplemented by the drawings of the patent and the expert testimony of Mr. Beall, that the term "a relatively large radius" refers to a single radius.

1. "[I]n alignment" of Claim 5

> wherein said transitional area curves upward longitudinally to said sidewall, an annular sidewall continuously extending around said bottom **in alignment** with said sidewall, said annular wall having a bottom edge forming a lower support surface projecting beyond the bottom surface of said bucket

a. *Magistrate Judge's Ruling*

The magistrate judge interpreted the phrase "in alignment" in Claim 5 to mean "in a straight line with" after considering both the defendants' and plaintiffs' dictionary interpretations of the phrase. R&R at 14. The magistrate judge relied on *Phillips* to emphasize that the use of dictionaries to assist in determining the ordinary and customary meaning of claim terms has its limitations. *Id*. at 12. Further, the magistrate judge noted that 'ordinary meaning' is the meaning

13

to the ordinary artisan after reading the entire patent. *Id*. at 13. However, the magistrate judge was not persuaded that a person of ordinary skill in the art of molding plastic buckets would interpret "in alignment" to include "parallel." *Id*. at 13-14. The magistrate judge noted that neither the claims nor the specification provide any description of the placement of any parallel foot extending from the bucket side wall. Instead, Figure 5 of the '493 patent shows the annular sidewall (134) extending underneath the sidewall of the bucket (112) in a straight line. *Id*. at 13.

      b.     *The Defendants' Objections*

The defendants argue that the magistrate judge ignored the ordinary meaning of the term "in alignment" when she rejected citation to dictionary definitions and instead imposed a limitation on the meaning of the term from the preferred embodiment in Figure 5. Defs. Objections at 10. They also contend that the magistrate judge incorrectly relied on *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), in rejecting dictionary definitions proposed by the parties because the '493 patent does not define or explain the term "in alignment." *Id*. at 10. Specifically, the defendants submit that the appropriate consideration of dictionary definitions combined with the context of the specification requires a finding that "in alignment" means "generally or substantially in a straight line or parallel lines." *Id*. at 9-11. In support, the defendants argue that the embodiment in Figure 5 illustrates something other than a straight line because the internal surface of the sidewall may be cored out to support another bucket, and the wall thickness of the lower end of the bucket may be increased up to 20%. *Id*. at 11.

      c.     *This Court's Construction*

    In *Phillips*, the Federal Circuit stated:

> Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context.

*Phillips*, 415 F.3d at 1321.

Here, nothing in the intrinsic evidence indicates that one skilled in the art would view the ordinary meaning of "in alignment" to mean "parallel." When referring to the annular bottom portion and the sidewall, the specification does not mention the word "parallel," nor does it indicate that these two elements should be parallel. Instead, Figure 5 of the '493 patent shows that the annular sidewall (134) extends directly beneath the sidewall (112) in a straight line. '493 patent at Fig. 5. Further, the specification notes that "[t]he bottom of the bucket merges with sloped sidewall through an interface." Since the sidewall merges with the bottom through the interface, to have the annular sidewall parallel with the sidewall requires an offset configuration, which does not support the patent's intent to prevent corner stress points. *See* '493 Patent at Cols. 4:65 – 5:1 (where specification states that "[t]he plastic is allowed to flow freely around the corner in the molding process of bucket and also into the annular bottom portion or foot in order to prevent corner stress at areas upon which the bucket rests").

In addition, even though the '493 patent indicates that the *internal* surface of the sidewall may be cored out to support another bucket ('493 patent at Col. 5:9-12, Fig. 5) and the wall thickness of the bucket at its lower end may be thickened up to 20% ('493 patent at Col. 5:6-9), one skilled in the art would not interpret these modifications to suggest the annular bottom portion is parallel to the sidewall when it must be positioned straight under the sidewall to prevent corner stress. Finally, the defendant's assertion that the term "in alignment" should be construed to mean parallel would improperly impose a restriction narrower that the term's ordinary meaning. *See, e.g.*, *Phillips*, 415 F.3d at 1323 (noting that "in *Acumed*, the Federal Circuit refused to impose a restriction from the specification narrower than the term's ordinary meaning" and declined to interpret "transverse" as meaning "perpendicular" where the intrinsic evidence suggested that the

15

patentees knew how to restrict their claim coverage, but chose a different claim term that implied a broader scope)(citing *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 (Fed. Cir. 2007)).

Based on the language of the specification, the claims, and the figures of the '493 patent, the court concludes that one skilled in the art would not construe "in alignment" to mean "parallel." As a result, the defendants' reliance on the extrinsic dictionary definition does not override the intrinsic evidence supporting this court's construction. Thus, the court construes "in alignment" to mean "in a straight line with."

        2.    "[G]enerally V-shaped ribs" of Claim 6

> The molded bucket according to claim 5 wherein said ribs are arranged in a diagonal orientation forming **side-by-side generally V-shaped ribs**.

        a.    *Magistrate Judge's Ruling*

The magistrate judge determined that "generally V-shaped" ribs means two diagonal lines that extend at an angle but in opposite directions like the "over-all" features of the letter "V," but does not require that the lines come to a point like the letter "V." R&R at 17. The magistrate judge construed the term by looking at the language of the claim and the common meaning of the word "generally." *Id*. at 16-17. When comparing the language of Claim 1, which describes the ribs on the lid to be "disposed diagonally to form side-by-side V-shaped ribs," and Claim 6, which describes the ribs on the bottom to be "in diagonal orientations forming side-by-side generally V-shaped ribs," the magistrate judge gave the word "generally" significance. *Id*. at 17. Since "generally" is expressly tied to the adjective "V-shaped," the magistrate judge stated that there can be some deviation from a precise "V" so the diagonal lines need not come to a point. *Id*.

        b.    *The Defendants' Objections*

The defendants argue that the magistrate judge's construction of "generally V-shaped ribs" cannot be accepted because it is so broad as to leave no indication as to the limit of what constitutes a "V" shape. Defs. Objections at 12. Instead, the defendants request the court to adopt the interpretation that "generally V-shaped ribs" must meet at a point on the bucket with a modification to the apex where the bottom tip is chopped off. *Id*. The defendants argue that Figure 9 shows a modified apex at the top and the bottom of the bucket. *Id*. Thus, they assert that "generally V-shaped ribs" should be construed as requiring the ribs to touch in a modified apex. *Id*. at 13.

          c.     *This Court's Construction*

As an initial matter, the court notes that "[w]ords of approximation, such as 'generally' and 'substantially,' are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310-11 (Fed. Cir. 2003)(internal quotations omitted)(discussing that "the claim language itself expressly ties the adverb 'generally' to the adjective 'parallel,' the ordinary meaning of the phrase "generally parallel" envisions some amount of deviation from exactly parallel. It is the claim limitation, as a whole that must be considered in claim construction."). Thus, the addition of the word "generally" to Claim 6 thus must be given significance. Because the adverb "generally" is expressly tied to the adjective "V-shaped," the use of the term "generally" in Claim 6 indicates a deviation from a precise "V."

In addition, the intrinsic evidence does not support the defendants' construction that "generally V-shaped ribs" are required to touch in a modified apex. Instead, contrary to the

defendants' position, the intrinsic evidence strongly suggests a difference between the ribs on the bottom of the bucket and the ribs on the curved flange section at the top of the bucket.

Specifically, the ribs on the bottom of the bucket, introduced in Claim 5 and described in Claim 6, are stated to be "diagonal orientations forming side-by-side *generally* V-shaped ribs." '493 patent at Col. 7:16-17 (emphasis added). In contrast, the ribs on the curved flange on the top of the bucket were not described in the claims, but were described in the specification as "a plurality of diagonal ribs" being "disposed in a V-shaped arrangement having a modified apex at the ends of each rib." '493 patent at Col. 4:53-54. The phrase "generally V-shaped ribs," as used in Claim 6 to describe the ribs on the bottom of the bucket, is, to state the obvious, different from the term "a modified apex," which is used to describe the ribs on the curved flange on the top of the bucket. Indeed, the language in the specification expressly states that the diagonally oriented ribs on the bottom of the bucket are merely "similar" to the ribs on the top of the bucket, not identical. '493 patent at Col. 5:1-2.

As noted by the plaintiffs, if the inventor had intended to describe the ribs at the top of the bucket in the same way as those on the bottom of the bucket, he would have done so. Moreover, as evidenced from the prosecution history, the description of the ribs on the bottom of the bucket does not include the term "modified apex," which is used for the top of the bucket. Instead, the ribs on the bottom of the bucket are described as being "separated" at the apex. Def. Appx. Exh. 11, P 001804:7-9.

The court also is not persuaded by the defendants' assertion that Figure 9, which shows the ribs on the bottom of the bucket and the ribs on the curved flange of the top of the bucket, requires that a "modified apex" definition controls because the claim language cannot be confined to one

particular embodiment when the specification indicates that multiple embodiments are possible. *KCJ*, 223 F.3d at 1356; '493 patent at Fig. 9.

Further, while the defendants assert that the magistrate judge's construction of "generally V-shaped ribs" is too broad, the court should consider adopting a narrower meaning only "where there is an equal choice between a broader and narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996). This principle is not implicated with respect to the construction of the term "generally V-shaped ribs" because the use of the word "generally" coupled with the language in the specification does not indicate a narrower meaning should be adopted.

Finally, the court finds that, contrary to the defendants' assertion, the issue as to how far apart the diagonal lines will need to be on a bucket to be "generally V-shaped" is a question of infringement, not of claim construction, because it would need to be determined in reference to an accused device. *Miken Composites*, 515 F.3d at 1336.

The court concludes that "generally V-shaped ribs" means two diagonal lines that extend at an angle but in opposite directions like the "over-all" features of the letter "V," and does not require that the lines come to a point like the letter "V."

## IV.     Conclusion

For the reasons stated herein, the defendants' objections to the magistrate judge's ruling are overruled.

**ENTER:**

**DATE: June 19, 2009**

*Blanche M. Manning*
**Blanche M. Manning**
**United States District Judge**