## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. VON HOLDT, JR.; JANICE ANDERSON, individual Illinois Residents; and PLAS-TOOL CO., and Illinois corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 04 C 4123 |
| A-1 TOOL CORPORATION, an Illinois corporation; TRIANGLE TOOL CORPORATION, a Wisconsin corporation; ALFONSO ARCINIEGAS, an individual Illinois resident; GOFFREY LUTHER, an individual Illinois resident; and LEROY LUTHER, an individual Wisconsin resident, | ) ) ) ) ) ) ) ) | Judge Blanche M. Manning |
| Defendants. | ) ) ) | |

### MEMORANDUM AND ORDER

John W. von Holdt, Jr., Janice Anderson, and Plas-Tool Company (collectively "the plaintiffs") filed a complaint against A-1 Tool Corporation, Triangle Tool Corporation, Alfonso Arciniegas, Geoffrey Luther, and LeRoy Luther (collectively, "the defendants"), alleging patent infringement (Count I), a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* (Count II), and various state law claims including violations of the Illinois Trade Secrets Act ("ITSA") (Count III), breach of fiduciary duty (Count IV), inducement to breach fiduciary duty (Count VII), tortious interference with business expectancies (Count VIII), and conspiracy to tortiously interfere with business expectations (Count IX). The defendants have filed two motions for summary judgment: one seeks judgment as to the patent infringement claim and the other as to the remaining claims. For the reasons stated below, the court grants the

motion for summary judgment as to the patent infringement and CFAA claims and declines to exercise jurisdiction over the remaining state law claims.

## I.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48.  Federal Rule of Civil Procedure 56(c) ("Rule 56(c)") requires the nonmoving party to go beyond the pleadings and designate specific facts—by affidavits, depositions, answers to interrogatories, and admissions on file—showing that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 324.  The mere allegation of a factual dispute does not defeat a properly submitted motion for summary judgment; the standard is a *genuine* issue of *material* fact.  *Anderson*, 477 U.S. at 247-48.  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the nonmoving party.  *Id.* at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 574 (1986).  However, "[t]he district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc).

## II.    Patent Infringement Claim

The plaintiffs allege that the defendants infringed U.S. Patent No. 4,512,493 ("the '493 patent"), which is entitled "Molded Bucket And Lid Having High Stack Strength."  The

defendants have moved for summary judgment on the patent infringement claim, on the ground, among others, that the plaintiffs failed to provide proper notice of infringement pursuant to 35 U.S.C. § 287(a).

## A. Facts

### i. Background

Plas-Tool designs and manufactures plastic injection molds for use in the manufacture of plastic industrial pails. John von Holdt, Sr. ("von Holdt, Sr.") founded Plas-Tool in 1952, and he is the named inventor of the '493 Patent, which was filed on August 1, 1983. The patent issued on April 23, 1985, and expired on April 23, 2002. Von Holdt, Sr. assigned the '493 patent to John von Holdt, Jr. ("von Holdt, Jr.") and Janice Anderson who, together, are the majority shareholders of Plas-Tool. Plas-Tool was not an owner of the '493 patent, but rather a non-exclusive licensee. The plaintiffs filed this patent infringement action against the defendants on June 18, 2004, alleging infringement of claims 5, 6, and 7 of the '493 patent.

### ii. Actual Notice

Alfonso Arciniegas was an employee, a vice president, and a shareholder of Plas-Tool prior to late 1997, at which time he left to work for A-1 (it is disputed whether Arciniegas was employed by Triangle). The plaintiffs assert that Arciniegas knew of the '493 patent, knew what acts constituted infringement of the '493 patent, and was assigned the responsibility of helping to enforce the '493 patent while at Plas-Tool. As discussed on more detail later, the defendants dispute this contention on the grounds that it is irrelevant whether Arciniegas knew of the patent and, in any event, is merely speculative. The plaintiffs also assert that A-1 and Triangle had not sold an industrial pail mold in over twenty years prior to Arciniegas' employment with A-1, and

that within weeks of such employment, A-1 was actively designing and selling molds that made the allegedly infringing pails. The defendants again dispute this as irrelevant.

The plaintiffs also offer a declaration by von Holdt, Jr. stating that, a few days before Arciniegas left Plas-Tool in 1997, von Holdt, Sr., Arciniegas, and von Holdt, Jr. met in a conference room at Plas-Tool where von Holdt, Sr. told Arciniegas: "I think that you are planning to steal our designs and patents. If you or A-1 infringe any Plas-Tool patents or steal any designs of patented features, we will sue you." The von Holdt, Jr. declaration further states that, two weeks later, Arciniegas told von Holdt, Jr.: "I know there is concern that I am going to disclose what I learned about pails and lids at Plas-Tool. I told those guys [Geoffrey and LeRoy Luther] that I would not help make, design or sell pail molds because that would be wrong. . . . I am still a shareholder of Plas-Tool. If any customers want molds that produce Plas-Tool's patented products, I will refer them to Plas-Tool." Lastly, the von Holdt, Jr. declaration asserts that, shortly after Arciniegas left Plas-Tool, von Holdt, Sr. called Geoffrey Luther and expressed concern that the defendants were planning to steal the plaintiffs' designs and stated that, if they did steal any Plas-Tool design, he would bring a lawsuit for patent infringement. Again, the defendants contend that these statements are irrelevant and, in any event, constitute hearsay and lack foundation.[1] The court discusses the objections later in this order.

### iii. Constructive Notice

---

[1] The defendants also assert that von Holdt, Jr.'s declaration should be excluded as a discovery violation because the alleged conversations contained in the declaration (1) were not disclosed during discovery, (2) are inconsistent with his prior testimony, and (3) are inherently unreliable and unduly prejudicial given the length of time between the alleged conversation and the plaintiffs' first disclosure of these exact quotations. (*Id.*) The court, however, need not resolve this point as its resolution does not affect the issue of whether the plaintiffs provided statutory notice of the patent to the defendants.

Von Holdt, Jr. testified in his 30(b)(6) deposition that Plas-Tool's company policy and practice required that pails sold in the United States that had patented features be marked with the applicable patent. He also testified that two molds sold to a third-party manufacturer, Beres Industries ("Beres"), and shipped on April 2, 2001, were marked with the '493 patent number. It is disputed when or whether buckets were made from these molds or sold to customers. Von Holdt, Jr. further testified in his 30(b)(6) deposition that when the Beres molds in question were returned to Plas-Tool, one of the marks had been filled in with a solder and "blitzed off." There is no evidence from either party as to when this removal of the marking occurred, or whether Beres actually used the marked or unmarked mold, or both, to make and sell buckets.

Furthermore, von Holdt, Jr. testified in his 30(b)(6) deposition that he does not have a specific recollection of each individual job, but has no reason to believe that any jobs, except for a few molds sold to another third-party manufacturer, Morris Enterprises ("Morris"), in the 1980s were not marked in accordance with Plas-Tool's policy. During the deposition, von Holdt, Jr. estimated that Morris produced 400,000 to 500,000 buckets allegedly covered by the '493 patent. The plaintiffs object to this estimate as inadmissible speculation.

In response to the question at his deposition, "Do you know the last time [Morris] used one of [Plas-Tool's] molds?", von Holdt, Jr. replied, "I have no idea." The plaintiffs, however, offer a subsequent declaration by von Holdt, Jr. stating that Morris would have stopped producing unmarked buckets covered by the '493 patent before the defendants' alleged infringement began in 1998. The defendants move to exclude this declaration on the grounds that it contradicts von Holdt, Jr.'s prior testimony. Furthermore, von Holdt, Jr. was unable to confirm any other specific examples of marking with regards to other United States Plas-Tool customers, including Leaktite, Polyethylene Containers, and Protector Products.

### B.   The Marking Statute - § 287(a)

#### i.   In General

35 U.S.C. § 287(a) provides in relevant part:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them. . . may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, . . . . *In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement* and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a)(2006) (emphasis added).

When a patentee, or any licensee of the patentee, makes offers for sale, or sells a patented product, § 287(a) of the Patent Act limits the time period for which a plaintiff can recover damages for infringement to the time that the accused infringer was put on notice of infringement. *See Am. Med. Sys., Inc.* ("*AMS*") *v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993); *Lampi Corp. v. Am. Power Prods., Inc.*, No. 93-C-1225, 2004 U.S. Dist. LEXIS 14049, at *10-11 (N.D. Ill., Jul. 22, 2004) ("When a patentee, or its licensee, manufactures a patented product but does not prove that the product was marked with the patent number, § 287 bars any recovery of damages prior to the date the infringer was 'notified of the infringement.'"). Notice under § 287(a) can be either constructive or actual. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). A patentee provides constructive notice by marking the product with "the word 'patent' or the abbreviation 'pat.', together with the number of the patent." 35 U.S.C. § 287(a). A patentee provides actual notice through "an affirmative act on the part of the patentee which informs the defendant of his infringement." *Amsted Indus. Inc. v. Buckeye Steel*

*Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (interpreting *Dunlap v. Schofield*, 152 U.S. 244, 247-48 (1894)).

The patentee has the burden of pleading and proving at trial that it has complied with the statutory requirements of § 287(a). *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) ("The patentee bears the burden of proving compliance by a preponderance of evidence."); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). The marking provision also extends to licensees and other authorized users. *Maxwell*, 86 F.3d at 1111 (upholding a jury verdict that the patentee complied with the marking requirement when the patentee had "made extensive and continuous efforts to ensure compliance by [its licensee]"). However, the Federal Circuit noted in *Maxwell* that in the case of "third parties unrelated to the patentee [such as Beres in this case], it is often more difficult for a patentee to ensure compliance with the marking provisions," and thus the Federal Circuit applies a "rule of reason" analysis in determining whether the patentee's conduct was in "substantial compliance" with the statute. *Id.* A patentee is in substantial compliance when "the patentee made reasonable efforts to ensure [the third party's] compliance with the marking requirements." *Id.* at 1112.[2]

### ii. Burdens on Summary Judgment With Respect to § 287(a)

As stated, the plaintiffs in this case bear the burden of proof at trial of showing affirmative compliance with the marking statute. *See Nike*, 138 F.3d at 1446. Accordingly, to survive the defendants' motion for summary judgment on the issue of notice under § 287(a), the plaintiffs must make an evidentiary showing that could lead a reasonable juror to find that the plaintiffs were, in fact, in compliance with the marking statute. *See Celotex*, 477 U.S. at 322-23.

---

[2] It is not clear from the record whether Beres Industries, a party who purchased molds from the plaintiffs, should be properly classified as a licensee. However, whether Beres is a licensee or simply an authorized user does not change the court's analysis or conclusion on the issue of marking.

Under *Celotex*, the defendants have no burden to establish non-compliance with the marking statute because compliance with § 287(a) is an essential element of the plaintiffs' case on which the plaintiffs bear the burden of proof at trial. *See id.* at 323-24 (explaining that Rule 56(c) contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim").

### C. Have Plaintiffs Established Actual Notice?

The Federal Circuit has held that actual notice under § 287(a) "requires the affirmative communication of a specific charge of infringement by a specific accused product." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Actual notice is satisfied when the patentee informs the alleged infringer of "the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *SRI Int'l v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997).

The defendants first argue that the plaintiffs failed to notify the defendants of their purported infringing activity until June 18, 2004, when they filed this action. Indeed, von Holdt, Jr. testified at his deposition that prior to filing the instant lawsuit, Plas-Tool did not notify the defendants of the purported infringement. *See* Defendants' Response to Plaintiffs' Statement of Additional Facts, ¶66, citing to von Holdt, Jr. dep. at pp. 300-304 ("Q; Prior to filing this litigation, had Plas-Tool notified any of the defendants as to the purported infringement of the '493 patent? A: No, I don't believe so."). Because the '493 patent expired on April 23, 2002, prior to the filing of the instant lawsuit, the defendants contend that the plaintiffs failed to give requisite notice.

8

In response, the plaintiffs argue that Plas-Tool had actual notice from Arciniegas, who left Plas-Tool and began working for A-1 in 1997, and who the plaintiffs assert knew of the '493 patent and helped to enforce it. However, the Federal Circuit has stated that "[i]t is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under § 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted*, 24 F.3d at 187. Therefore, both Arciniegas' knowledge of the '493 patent and his role in enforcing it while employed at Plas-Tool is irrelevant to the actual notice inquiry.

Second, the plaintiffs contend that actual notice was provided during a meeting between Arciniegas, von Holdt, Jr., and von Holdt, Sr. around the time that Arciniegas left Plas-Tool. According to von Holdt, Jr.'s declaration, these men met in a conference room at Plas-Tool at which time von Holdt, Sr. told Arciniegas: "I think that you are planning to steal our designs and patents. If you or A-1 infringe *any* Plas-Tool patents or steal any designs of patented features, we will sue you." (Pls.' Resp. Br. at p. 23) (emphasis added). In addition, von Holdt, Jr. further states in his declaration that two weeks after this meeting, Arciniegas told von Holdt, Jr. that he would not disclose what he learned about pails and lids at Plas-Tool, would not help Geoffrey or LeRoy Luther make, design, or sell pail molds, and that he would refer any customers to Plas-Tool who wanted molds for Plas-Tool's patented products. (*Id.* at pp. 23-24.) Finally, von Holdt, Jr. states in his declaration that shortly after Arciniegas left Plas-Tool, von Holdt, Sr. called von Holdt, Jr. to tell him that von Holdt, Sr. had called Geoffrey Luther and threatened to bring a patent infringement lawsuit if the defendants stole any of the plaintiffs' designs. (*Id.* at p. 24.)

The defendants object to these statements on the ground that they are hearsay. As to von Holdt Sr.'s purported warning to Arciniegas not to infringe, because it is being offered to show notice rather than for the truth of the matter asserted, it is not hearsay and is therefore admissible. *Cook v. Navistar Int'l Transp. Corp.*, 940 F.2d 207, 213 (7th Cir. 1991)(out of court statements offered to prove that a listener had notice of the information contained therein, rather than to prove the truth of the matter asserted, are not hearsay). Regarding von Holdt Sr.'s description of the Luther conversation to von Holdt, Jr., the plaintiffs argue that it is admissible under the present sense impression exception to the hearsay rule. *See* Fed. R. Evid. 803(1)(excluding from the hearsay rule any "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter"). von Holdt, Sr.'s statement to von Holdt, Jr. about von Holdt, Sr.'s phone call does not satisfy the requirements of a present sense impression and is therefore inadmissible. *United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002)("A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near simultaneous perceptions."). Finally, as to Arciniegas's purported statement to von Holdt, Jr., it is an admission of a party opponent and is therefore admissible under Fed. R. Evid. 801(d)(2).

Nevertheless, the asserted communications that are admissible are simply insufficient to constitute actual notice because they fail to identify any asserted Plas-Tool patent or to identify any specific accused A-1 product or products. *See Amsted*, 24 F.3d at 187. In *Amsted*, Amsted sent a letter to the accused infringer, Buckeye, stating that Buckeye should "acquaint [it]self with the ['269 patent] and refrain from supplying or offering to supply component parts which would infringe or contribute to the infringement of the patent," and that Amsted "expect[ed] to continue

to enforce [its patent] rights which it ha[d] acquired." *Id.* at 186. The Federal Circuit held that this particular Amsted letter was insufficient to meet the actual notice requirements as a matter of law because it did not include an "affirmative communication of a specific charge of infringement by a specific accused product or device." *Id.* at 187. Similarly here, the alleged warning from von Holdt, Sr. to Arciniegas does not meet the standard for actual notice. Von Holdt, Sr.'s admonition states only a general intent to enforce unnamed Plas-Tool patents against Arciniegas and A-1, but fails to charge any specific A-1 product or products with infringement of particular patents.

The plaintiffs cite to *Wokas v. Dresser Indus., Inc.*, for the proposition that the notice requirement may be satisfied by threatening suit against a party that is *planning* to engage in conduct that would infringe the asserted patent. 978 F. Supp. 839, 844-46 (N.D. Ind. 1997) (holding that notice of planned infringement was sufficient to survive summary judgment). However, the plaintiffs misconstrue *Wokas* by omitting the critical facts of that case. Unlike the purported notice here, the patentee's notice letter in *Wokas* met the standard of "an affirmative communication of a specific charge of infringement by a specific accused product or device" by (1) citing to the relevant patent number, (2) clearly listing the accused products ("vapor recovery hoses, nozzle spouts, and seals" in that case), and (3) offering to negotiate a license with the defendant. *Id.* at 844. The plaintiffs have done none of this here, and, as discussed above, fail to meet the *Amsted* standard.

Finally, the court notes that the filing of this patent infringement action cannot serve as actual notice for the purposes of accruing damages because this action was filed on June 18, 2004, after the date of expiration of the '493 patent on April 23, 2002.

Accordingly, the plaintiffs fail to point to any facts that could lead a reasonable juror to find that the plaintiffs had provided actual notice of the '493 patent.

### D.  Have the Plaintiffs Established Constructive Notice?

To satisfy the requirements of constructive notice through marking, the Federal Circuit has held that the plaintiff must show that "substantially all of [its patented products] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous." *Nike*, 138 F.3d at 1446; *AMS*, 6 F.3d at 1537. "The purpose of the constructive notice provision is to give patentees the proper incentive to mark their products and thus place the world on notice of the existence of the patent." *AMS*, 6 F.3d at 1538 (internal citations omitted). There is no compliance with the marking requirement if the patentee marks certain products, yet continues to supply unmarked products. *Id.* (holding that the patentee was "not in full compliance with the marking statute while it continued to ship its unmarked products" because, in this scenario, "the world cannot be 'put on notice'"). In this case, the plaintiffs must establish compliance with the marking statute during the relevant time period, between 1998, when Plas-Tool began producing the accused products, and April 23, 2002, the date of expiration of the '493 patent.

The defendants argue that the plaintiffs cannot meet their burden of proving that "substantially all" of the patented buckets were marked. In response, the plaintiffs point to von Holdt, Jr.'s sworn 30(b)(6) deposition testimony where von Holdt, Jr. testified that "Plas-Tool's company policy and practice required that pails sold in the United States that had patented features be marked with the applicable patent," and that "Plas-Tool followed that practice." The plaintiffs assert that "[w]hile von Holdt, Jr. does not have a specific recollection of each

individual job, he has no reason to believe that any jobs, except a few molds in the 1980's for Morris, were not marked in accordance with Plas-Tool's policy."

The defendants rely on *Nike* for the contention that documentation beyond sworn testimony is required to show compliance with the marking statute as a matter of law. *Nike*, 138 F.3d at 1447. The court agrees with the plaintiffs that *Nike* does not establish that sworn testimony regarding policy and practice is insufficient to establish marking as a matter of law. Instead, *Nike* stands for the proposition that factual issues regarding whether patentees complied with the marking statute must be determined in the first instance by the district court. *See id.* However, the court emphasizes that it is indeed appropriate to resolve the issue of notice on summary judgment if the plaintiff fails to meet its burden to provide facts upon which a reasonable juror could find compliance with the marking statute. *Gart*, 254 F.3d at 1339

Nevertheless, evidence of current company policy and practice, without any other evidence of compliance with the marking requirement during the relevant time period, is insufficient to overcome a motion for summary judgment. *See Hypetherm, Inc. v. Am. Torch Tip Co.*, No. 05-CV-373-JD, 2009 WL 57525, at *3 (D.N.H. Jan. 7, 2009). In *Hypetherm*, the plaintiff, in response to the defendant's assertion that it had not complied with §287(a) presented evidence of its general policy and practice of marking. Id. The *Hypetherm* court held that general policy and practice was insufficient to overcome the defendant's motion for summary judgment because the plaintiffs failed to "address the specific evidence presented by ATTC that products were not marked with the '510 patent." *Id.* "For example, Hypetherm did not augment its evidence about its marking practices with specific evidence of products actually marked with the [relevant patent]," or "submit affidavits from its employees or principals that its products were marked . . . with the [relevant patent]." *Id.* (citing *Sentry Prot. Prods., Inc. v. Eagle Mfg.*

*Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (an affidavit and sales documents from the relevant period were sufficient evidence to survive summary judgment). *See also Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979, 984 (D. Mass. 1992) (holding that a plaintiff may show compliance with the marking requirement through evidence of policy and practice when evidence of a "strong and strict company policy" is accompanied by "more specific evidence that it marked its [patented products] during the relevant time frame," including, in that case, (1) a customer declaration that the patented article has always been marked, (2) current photographs of the patented product showing marking, and (3) declarations of three Ceeco employees confirming marking of the products).

The only additional evidence of marking beyond von Holdt, Jr.'s assertion regarding Plas-Tool's policy and procedure is that one of Plas-Tool's customers, Beres, marked buckets sometime after April 2, 2001, based on the fact that Plas-Tool sold two bucket molds engraved with the patent number to Beres, which were shipped on April 2, 2001. Even with respect to these two molds, however, it is undisputed that one of the molds sold to Beres was returned to Plas-Tool with the patent number filled in such that any buckets made from that mold would not have been marked.

The plaintiffs respond by attempting to shift the burden to the defendants, arguing that the defendants have presented no evidence that any buckets were made from the Beres mold after the number was filled in or that the number was filled in before the patent expired. However, contrary to the plaintiffs' assertion, it is the plaintiffs' burden to submit evidence that Plas-Tool "made reasonable efforts" to ensure that Beres marked the patented products. *See Celotex*, 477 U.S. at 323-24; *Gart*, 254 F.3d at 1339; *Maxwell*, 86 F.3d at 1111. Even if the court assumes that the plaintiffs satisfied this "reasonable effort" requirement with regards to

Beres' molds, the evidence by itself fails to show that "substantially all" of their products were marked.

Indeed, as the defendants note, the plaintiffs have provided no evidence that molds sold to other Plas-Tool customers, including Leaktite, Polyethylene Containers, and Protector Products (first mentioned in Def.'s Reply Br. at p. 4.), were marked. The plaintiffs respond that, "while [von Holdt, Jr.] did not have a specific recollection of the jobs, he had no reason to believe they were not marked in accordance with Plas-Tool's policy." Thus, the plaintiffs admit that von Holdt, Jr. has no specific recollection of the jobs. The plaintiffs merely speculate that molds sold to other Plas-Tool customers would have been marked based on their policy and practice. Importantly, they fail to offer any photographs, affidavits, testimony, or supplementary declarations from any of Plas-Tool's customers confirming marking on their molds.

Moreover, the defendants note that Plas-Tool sold five or six molds to another customer, Morris, in the 1980s that did not have engraving in the mold to mark the buckets. The plaintiffs admit that they sold unmarked molds to Morris in the 1980s, but the parties dispute whether Morris manufactured and sold buckets during the relevant time period. Whether Morris manufactured and sold unmarked buckets during the relevant time period is of some importance because constructive notice begins once marking becomes consistent and continuous in the marketplace. *See Nike*, 138 F.3d at 1446. However, even if the court finds that Morris did not manufacture or sell unmarked buckets covered by the '493 patent during the relevant time period, as the plaintiffs assert, the plaintiffs have nevertheless failed to point to any evidence of marking with respect to any other Plas-Tool customers, as discussed above.

Unlike the customer declaration, photographs, and three employee declarations in the *Ceeco* case, the only actual evidence that the plaintiffs have submitted in addition to von Holdt,

Jr.'s 30(b)(6) deposition testimony of Plas-Tool's general company policy and practice is that two molds shipped to Beres on April 2, 2001 were engraved with the '493 patent number, and may have produced buckets covered by the '493 patent sometime thereafter. Moreover, one of these two molds was returned to Plas-Tool with the patent number soldered off, such that any buckets made from that mold would not have been marked. The plaintiffs provide no evidence of reasonable efforts to ensure Beres complied with marking. Even if marking would be sufficient to survive summary judgment with regards to Beres, the plaintiffs failed to respond to the defendants' motion with any non-speculative evidence of marking regarding the molds sold to any other Plas-Tool customers, including Leaktite, Polyethylene Containers, Protector Products, and Morris.

The plaintiffs have thus failed to point to any evidence that could lead a reasonable juror to find that substantially all of its patented buckets in the marketplace were marked at any time between 1998 and 2002. Moreover, because the notice requirement was not met until after the expiration of the '493 patent, the plaintiffs are precluded from recovering any damages for patent infringement in this case. *See AMS*, 6 F.3d at 1537; *Hazeltine Corp. v. Radio Corp. of Am.*, 20 F. Supp. 668, 671 (1937) (explaining that notice is a "statutory duty which [i]s a prerequisite to [] in rem notice to the world, and hence, . . . a condition precedent to [a] cause of action for damages or accounting for profits"); *Dunlap v. Shofield*, 152 U.S. 244, 248 (1893) ("[M]arking the articles, or notice to the infringers, is made by the statute a prerequisite to the patentee's right to recover damages against them."). Accordingly, the court grants the defendants' motion for summary judgment on the issue of notice under § 287(a).

In light of the fact that the court has granted summary judgment to the defendants with respect to the patent infringement claim based on lack of notice, the court need not reach the

issues raised in the defendants' counterclaims. *See, e.g., Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004)("A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion.")(*citing Nystrom v. TREX Co.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003)).

## III.    Computer Fraud and Abuse Act (CFAA) Claim

In Count II, the plaintiffs allege that Arciniegas accessed Plas-Tool's computers in violation of the Computer Fraud and Abuse Act ("CFAA"). The defendants move for summary judgment regarding this claim on two grounds: (1) the plaintiffs cannot show a $5,000 loss and (2) they cannot show that Arciniegas accessed the computers. Because the plaintiffs cannot show a $5,000 loss as provided in the statute, the court need not address whether Arciniegas accessed the plaintiffs' computers.

### A.    Facts

As noted above, Plas-Tool is in the business of designing plastic pails and lids and designing and manufacturing plastic molds for making plastic pails and lids. Arciniegas was employed by Plas-Tool from 1978 until his resignation in 1997. Initially, Arciniegas was a mold design engineer but eventually became Plas-Tool's principal salesperson in Latin America. Arciniegas is also the brother in law of John von Holdt, Jr., the son of Plas-Tool's founder. Von Holdt, Jr. is Plas-Tool's principal shareholder and, since 1998, has been its chairman.

In September 1997, Arciniegas met with A-1, a competitor of Plas-Tool who is also in the pail design and mold manufacturing business, to discuss the possibility of working at A-1. As a result of these discussions, Arciniegas resigned from Plas-Tool in November 1997 and began to work for A-1 in December 1997. This litigation followed in which the plaintiffs allege

the Arciniegas provided the defendants with confidential information regarding Plas-Tool's pail and mold designs.

A computer-assisted design ("CAD") system is used to assist in the design and manufacture of pails and molds. The effectiveness of a CAD system depends on the integrity of each CAD file. According to the plaintiffs, Arciniegas accessed nineteen CAD files without authorization in October 1997, after he had decided to resign from Plas-Tool in order to work at A-1. The plaintiffs also assert that Arciniegas gained unauthorized access to Plas-Tool's confidential files including CAD drawings with the assistance of a Plas-Tool consultant in September 1998. The defendants dispute that Arciniegas accessed Plas-Tool's computers or data. At some point prior to this litigation, Plas-Tool placed the actual computer that Arciniegas allegedly used to access the CAD files in storage and had no further plans to use the computer. Although Plas-Tool upgraded its CAD computer hardware, the files used by the new CAD system continued to be the same files Arciniegas allegedly accessed without authorization.

It is undisputed that Plas-Tool has not had any problems accessing or using its CAD system. Nevertheless, Plas-Tool hired a "forensic computer expert" to conduct a computer analysis. According to von Holdt, Jr., the purpose of the analysis was to determine both the scope of the alleged unauthorized access Arciniegas and to assess whether any of Plas-Tool's CAD files were damaged. Von Holdt, Jr. also stated that the analysis cost in excess of $5,000. The defendants dispute that this intrusion resulted in impairment or harm to any of the plaintiffs files or data, or that the analysis cost more than $5,000.

**B.     CFAA Overview**

The purpose of the CFAA is to punish individuals who destroy data and "the statute was not meant to cover the disloyal employee who walks off with confidential information." *Kluber*

*Shahn & Assoc., Inc. v. Cordogen, Clark & Assoc., Inc.*, No. 08-cv-1529, 2009 WL 466812 at *8

(N.D. Ill. Feb. 25. 2009).  While primarily a criminal statute, the CFAA also provides a private

right of action as follows:

> Any person who suffers damage or loss by reason of a violation of this section
> may maintain a civil action against the violator to obtain compensatory damages
> and injunctive relief or other equitable relief.  A civil action for a violation of this
> section may be brought only if the conduct involves 1 of the factors set forth in
> subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).  Damages for a
> violation involving only conduct described in subsection (c)(4)(A)(i)(I) are
> limited to economic damages. No action may be brought under this subsection
> unless such action is begun within 2 years of the date of the act complained of or
> the date of the discovery of the damage. No action may be brought under this
> subsection for the negligent design or manufacture of computer hardware,
> computer software, or firmware.

18 U.S.C. § 1030(g).

As quoted above, a "civil action for a violation of this section may be brought only if the

conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection

(c)(4)(A)(i)."  18 U.S.C.  1030(g).

The only subclause at issue in this case is (I), which provides for relief if the offense

caused "loss to 1 or more persons during any 1-year period. . . aggregating at least $5,000 in

value."[3]  Loss under the CFAA is defined as "any reasonable cost to any victim, including the

cost of responding to an offense, conducting a damage assessment, and restoring the data,

program, system, or information to its condition prior to the offense, and any revenue lost, cost

incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C.

§ 1030(e)(11).

### C.    No Evidence of Loss

---

[3]    The plaintiffs' complaint does not contain allegations implicating any of the other
subclauses: (II) medical treatment; (III) physical injury; (IV) threat to public safety; and (V)
computers used by the United States government.

The defendants argue in their motion for summary judgment that the plaintiffs cannot show the required loss because (1) any revenue lost was not related to the impairment of the computer or data and (2) no evidence exists that a purported "damage analysis" by the plaintiffs was undertaken out of a concern for the integrity of Plaintiffs' data or computers, as opposed to assisting with this litigation. Dfs.' Memo at pp. 61-62.

The plaintiffs concede that their CFAA claim is not based on lost revenue. Instead, the plaintiffs respond that they have shown a $5,000 loss based on "spending in excess of $5,000 to conduct a forensic computer examination – i.e. 'damage assessment' under the CFAA – to determine the scope of Arciniegas' unauthorized intrusion into its computer system and whether that intrusion resulted in the impairment or harm to any of Plaintiffs' files or data." Pls. Resp. at p. 61 (citing SAMF 140).

However, as noted recently by another court in this district, "[t]he alleged loss must relate to the investigation or repair of a computer or computer system following a violation that *caused impairment or unavailability of data or interruption of service*." *Mintel v. Neergheen*, 08 C 3939, 2010 WL 145786, at *10 (N.D. Ill. Jan. 12, 2010)(citations omitted)(emphasis added). "[C]osts that are not related to computer impairment or computer damages are not cognizable 'losses' under the CFAA." *Id.* (citations omitted).

Here, von Holdt's declaration, ¶75, the only evidence cited by the plaintiffs in support of their argument as to the instant issue, fails to mention any damage, impairment or interruption of service associated with Arciniegas' purported accessing of the relevant files; thus, because the plaintiffs have failed to point to any evidence establishing that their computers were impaired or that they suffered an interruption of service, the CFAA claim fails on this ground. *See id.* (rejecting a similar claim and stating that "[b]ecause Mintel has not demonstrated that it suffered

costs related to damage to its computers or that it suffered any service interruptions, it has failed to show any loss redressable under the CFAA."). *See also Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intern. Inc*., 616 F. Supp. 2d 805, 812 (N.D. Ill. 2009)(rejecting assertion of "loss" under the CFAA because "there was never any evidence that either [the plaintiff's] computers or its systems were damaged"); *First Mortgage Corp. v. Baser*, No. 07-C6735, 2008 U.S. Dist. LEXIS 36885, at *9, 2008 WL 4534124, *3 (N.D. Ill. Apr. 30, 2008) (finding that plaintiffs injury was not a "loss" under the CFAA because it was not "the result of the impairment or unavailability of data on the computer."); *Nexans Wires S.A. v. Sark-USA, Inc*., 166 Fed. Appx. 559, 562-63 (2nd Cir. 2006) ("Because it is undisputed that no interruption of service occurred in this case, L & K's asserted loss of $10 million is not a cognizable loss under the CFAA."); *Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd*., 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) ("Costs not related to computer impairment or computer damages are not compensable under the CFAA.").

Nor is the court persuaded by the plaintiffs' assertion that loss does not require an interruption of service or damage to the computer or computer system and finds the reasoning of the court in *Continental Group, Inc. v. KW Property Management, LLC*, 622 F. Supp. 2d 1357, 1371 (S.D. Fla. 2009), echoed by several courts in this district and others as noted above, to be correct:

> This Court, however, concludes that all loss must be as a result of "interruption of service." Otherwise, it would appear that the second half of the "loss" definition is surplusage. If loss could be any reasonable cost without any interruption of service, then why would there even be a second half to the definition that limits some costs to an interruption of service. Rather, the better reading . . . appears to be that all "loss" must be the result of an interruption of service. This conclusion is supported by the legislative intent in the CFAA, a criminal statute, to address interruption of service and damage to protected computers.

Moreover, there is nothing in the cited statement of fact or von Holdt, Jr.'s declaration to demonstrate that the alleged loss occurred in a one-year period as required by the CFAA. *See* § 1030(a)(5)(B)(i) ("loss to 1 or more person during any 1-year period . . . aggregating in at least $5,000 in value). Indeed, von Holdt's statement regarding the purported damage assessment contains no details whatsoever: it fails to name the person or entity that conducted the assessment, it does not state when the purported assessment was conducted, and it fails to point to any documentary evidence which could establish that the loss occurred during a 1-year period. Because von Holdt's brief statement regarding the assessment fails to demonstrate that the loss occurred during any 1-year period, the plaintiffs' CFAA claim fails on this ground also. Accordingly, Defendants' motion for summary judgment is granted as to Count II.

## IV. Jurisdiction Over Remaining State Law Claims

The plaintiffs assert both federal and state claims in this action. The federal claims are a patent infringement claim under 35 U.S.C. § 1 *et seq.* (Count I), and a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* (Count II). This court has original jurisdiction over these claims pursuant to 28 U.S.C. §§ 1338(a) and 1331 respectively. The plaintiffs also allege state law claims, including violations of the Illinois Trade Secrets Act (Count III), breach of fiduciary duty (Count IV), inducement to breach fiduciary duty (Count VII), tortious interference with business expectancies (Count VIII), and conspiracy to tortiously interfere with business expectations (Count IX). The plaintiffs allege that this court has jurisdiction over these claims pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367.

Supplemental jurisdiction is the only basis for jurisdiction over the state law claims because the parties are not completely diverse. *Smart v. Local 702 Inter. Brotherhood of Elec.*

*Workers*, 562 F.3d 798, 803 (7th Cir. 2009)(complete diversity means that "no plaintiff may be from the same state as any defendant")(citations omitted). The plaintiffs are Illinois citizens. Pls.' Fourth Am. Compl. ¶¶ 1-3.[4] While defendants Triangle Tool Corporation and LeRoy Luther are Wisconsin citizens, the remaining defendants, A-1 Tool Corporation, Arciniegas, and Geoffrey Luther, are Illinois citizens. Pls.' Fourth Am. Compl. ¶¶ 4-8. At least one Illinois citizen defendant is named in all of the plaintiffs' state law claims. Because at least one plaintiff is not diverse from all the defendants, the court does not have diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967).

Section 1367(c)(3) specifically provides that district courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." In the Seventh Circuit, there is a "sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims." *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (emphasis in original). This presumption exists because, in the usual case, the balance of the factors to be considered in exercising supplemental jurisdiction – judicial economy, convenience, fairness and comity--point to declining to exercise supplemental jurisdiction over the remaining claims. *See Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The Seventh Circuit has identified three exceptions to the presumption: (1) when the statute of limitations has run on the pendent claims, precluding the filing of a separate suit in state court; (2) when substantial judicial resources have already been committed, which would require a substantial duplication of effort;

---

[4] The plaintiffs' Fourth Amended Complaint alleges that plaintiffs John W. Von Holdt, Jr. and Janice Anderson are Illinois residents residing in Glenview, Illinois and Northbrook, Illinois, respectively, and that Plas-Tool is an Illinois corporation with its principal place of business in Niles, Illinois. *See* Fourth Amended Complaint at ¶¶ 1-3.

and (3) when it is clear how the state claim can be decided based upon the district courts findings regarding the federal claims or because the state claim is obviously frivolous.  *Id.  See also Miller Aviation v. Milwaukee Co. Bd. of Supervisors*, 273, F. 3d 722, 732 (7th Cir. 2001) (discussing the second and third exceptions).

None of the exceptions apply in this case.  The statute of limitations is not an issue because under 28 U.S.C. § 1367(d), the limitations period is "tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  Therefore, the plaintiffs can still timely file their state law claims in state court.  Nor have substantial judicial resources been expended in considering the state law claims.  Indeed, the court's resolution of the federal claims in the instant motion for summary judgment did not require it to consider or analyze the facts related to the state law claims.  Accordingly, this factor does not call for retaining jurisdiction over the state law claims.  Finally, it is not clear how the state law claims should be decided based upon this court's findings regarding the federal claims nor can the court conclude that the state law claims are obviously frivolous.  For these reasons, the court declines to exercise supplemental jurisdiction over the state law claims and they are dismissed without prejudice.

## V. Conclusion

For the reasons stated above, the defendants' motion for summary judgment on the patent infringement claim and the CFAA claim is granted. The defendants' counterclaims [236, 237, 238, 239, 240] are dismissed without prejudice in light of the ruling on the defendants' summary judgment motion with respect to the patent infringement claim. Finally, the court declines to exercise jurisdiction over the plaintiffs' remaining state law claims; accordingly, they are dismissed without prejudice. All other pending motions are denied as moot. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

**ENTER:**

**DATE:** May 17, 2010

**District Judge Blanche M. Manning**